**Michael VASQUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01-81-0345-CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 27, 1983.

Discretionary Review Granted
April 11, 1984.

Allen Isbell, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before JACK SMITH, BULLOCK and COHEN, JJ.

## OPINION

JACK SMITH, Justice.

The appellant was convicted of capital murder and received a sentence of life imprisonment. Because he was a 16-year old minor at the time the offense occurred, the appellant was under the jurisdiction of the juvenile court. After a certification hearing, the appellant was ordered transferred to the district court, where he was later indicted for capital murder.

He contends that his conviction is void because, (1) he was not properly served with notice of the juvenile certification hearing; (2) that his confession should not have been admitted because the magistrate's certification did not comply with the applicable provisions of the family code; (3) that his confession should not have been admitted because it was the fruit of an illegal arrest; and, (4) a cigarette lighter allegedly belonging to the victim should not have been admitted into evidence because it was obtained as a result of an illegal arrest.

On October 3, 1978, Mary Dabney and Lynn Reeves Palmer went to a restaurant for drinks with friends after work. They arrived at the restaurant at about 5:30 p.m. and remained there until approximately 10:30 p.m.

As the two ladies left the restaurant and proceeded to the parking lot to obtain their car, Ms. Dabney noticed a young man standing between two cars. As they proceeded on they heard footsteps behind them and when they turned to look, they saw a young Latin American male behind them. At that time, the young man turned off in another direction. When they reached the car, Ms. Dabney started to unlock the door when she heard Ms. Palmer scream, "Mary, he stabbed me. I'm bleeding". As Ms. Dabney looked up, she was confronted by a man, wielding a knife, who demanded her purse. She surrendered her purse to him and he departed, running through the parking lot.

Ms. Dabney assisted Ms. Palmer to the restaurant where Ms. Palmer was treated for shock until an ambulance arrived. While waiting for the ambulance, Ms. Dabney gave a description of the attacker to a waitress. The waitress and other employees later told police officers that the description indicated that the attacker was Mike Vasquez, a former employee of the

restaurant, who had been seen at the restaurant earlier that evening. Ms. Palmer later died as a result of complications from the knife wound.

Detective Rush, of the Hedwig Police Department, testified that he arrived at the restaurant between 10:30 p.m. and 11:00 p.m. He stated that other officers were already taking statements from employees and customers, and he was directed to follow the ambulance to the hospital. Upon arriving at the hospital, Detective Rush was refused permission to interview Ms. Palmer. However, he was able to interview Ms. Dabney who described the attacker as a young, Latin American male, approximately 5′7″ to 5′9″ tall, of medium build, with collar length black hair. Ms. Dabney also told him that the attacker was wearing a blue shirt with a yellow design around the collar.

Detective Rush obtained the name, Michael Vasquez, from another police officer who told him he had obtained the name from the restaurant manager. On the following day, Detective Rush and Chief Jones, located an address on a Michael Vasquez from the files of the Houston Police Department. They arrived at that address about 3:00 to 3:30 p.m. and were directed to the house in which Michael Vasquez was living. They then set up surveillance and waited for the appellant to arrive.

The young man who had informed the officers of the house where Michael Vasquez resided, also told the officers that Vasquez would be back shortly in a particular type truck. When the described truck arrived at the residence under surveillance, the appellant, one other male, two females and a baby got out. The officers approached the group and identified themselves as police officers. At this point, one of the males, who the officers described as obviously intoxicated, began verbally abusing the officers. Chief Jones asked the loud one for his name but received no response. He then asked the appellant for his name, whereupon the male who had verbally abused the officers, said "Don't tell them, Mike". Jones then asked the appellant if he was Michael Vasquez and the appellant

said "yes". The appellant matched the physical description which the officers had and was wearing the same type shirt that Ms. Dabney had described to the police on the night of the stabbing. The appellant also had a large hunting knife on his belt.

The officers then tried to separate the appellant from the others, who were all becoming verbally abusive. Jones relieved the appellant of his knife and took him to the police car. As Jones placed the appellant in the car, Detective Rush noticed that the appellant threw away a small object. Detective Rush retrieved the object, which was a gold lighter bearing the initials LRP, which was identified at trial by Ms. Dabney as belonging to Ms. Palmer. The officers then made a call for help to the Houston Police Department in an effort to maintain the status quo.

The appellant had observed Rush retrieve the lighter and show it to Jones and as Rush got into the back seat with the appellant, prior to any questioning, the appellant volunteered the statement that he knew they had him because of the lighter.

When the Houston Officers arrived, Jones talked to them briefly and then drove Rush and the appellant back to Hedwig Village. As they drove away the appellant was advised he was under arrest and given his juvenile warnings. The appellant waived his rights and talked freely about the offense. As they proceeded along the way, the appellant pointed out the service station where he had dumped the purses after looting them. These purses had been turned over to the Houston Police Department by the manager of the service station who found them early that morning. Jones was able later to locate the purses based on the appellant's statement.

When they arrived at the Hedwig Village police station, Judge Neil McKay gave the appellant the required juvenile warnings outside the presence of the police officers. Appellant then dictated a confession to Detective Rush. When the confession was reduced to writing, Judge McKay, in private, again gave the appellant the required warn-

ings, after which the appellant signed the confession.

In his first ground of error, the appellant asserts he was not served with notice of the juvenile court's transfer hearing on January 4, 1979. He argues that because of lack of notice, the juvenile court was without jurisdiction to transfer him to the adult court. As a result, he asserts the indictment would be void and the adult court would be without jurisdiction to try the appellant for capital murder. He concedes that he was served with notice of a December 4, transfer hearing, but contends that no one came to that hearing and the actual hearing was not held until a month later.

The record reflects that appellant was properly served with notice of a December 4 transfer hearing and all parties appeared on that date. In fact, the appellant was twice served with a summons to the December 4 discretionary transfer hearing. The second summons was served because Ms. Palmer had died, and the allegations in the State's petition for transfer were changed from aggravated robbery to capital murder.

At the December 4 hearing, appellant's counsel moved to withdraw as attorney for the appellant because the appellant's father had promised to retain him and thereafter failed to communicate with him. The court granted counsel's motion to withdraw, appointed a new attorney to represent appellant, and reset the hearing to December 18. The case was again reset to January 4.

Appellant concedes that both summons met the requirements of the family code. We note that when the court appointed another attorney, the court was required to reset the case as the family code requires the court to give counsel at least 10 days notice to prepare for the hearing. Tex. Fam.Code Ann. § 51.10(h) (Vernon 1975).

■ Once the juvenile court obtains jurisdiction over the juvenile by proper service, the court's jurisdiction is not lost by ordering a continuance in the case. *In re Appeal of B.Y.*, 585 S.W.2d 349 (Tex.Civ. App.—El Paso 1979, no writ). In the instant case the continuance was granted for

appellant's benefit and at his counsel's request. Under these circumstances it was not necessary to re-serve the appellant.

The second summons was served on the appellant because of the death of his victim. It has been held that a change in a petition is not required unless the change is of major import. *See, B.R.D. v. State,* 575 S.W.2d 126 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). In the instant case, because the change was of major import, i.e., from aggravated robbery to capital murder, the appellant was served with a summons giving him notice of this major change.

By resetting the hearing in the case at bar, the court insured the appellant that he would be represented by counsel, statutory notice requirements would be met, and that all diagnostic studies could be completed. Appellant and his parents were present at the hearing, and the appellant does not claim that he was harmed or surprised by the court's action. The appellant's first ground of error is overruled.

■ In his second ground of error, the appellant asserts that the court erred in admitting his confession into evidence. He alleges that the confession was inadmissible because the magistrate's certification did not comply with the requirements of the Texas Family Code. Sec. 51.09 of the code contains the warning requirements for juvenile confessions and requires certification of the statement by a magistrate. The pertinent requirements of that section are set forth below:

(b) Notwithstanding any of the provisions of Subsection (a) of this section, a statement of a child is admissible in evidence in any future proceedings concerning the matter about which the statement was given if:

(1) when the child is in a detention facility or other place of confinement or in the custody of an officer, the statement is made in writing and the statement shows that the child has at sometime prior to the making thereof received from a magistrate a warning that:

(A) he may remain silent and not make any statement at all and that any statement he makes may be used in evidence against him;

(B) he has the right to have an attorney present to advise him either prior to any questioning or during the questioning;

(C) if he is unable to employ an attorney, he has the right to have an attorney to counsel with him prior to or during any interviews with peace officers or attorneys representing the state;

(D) he has the right to terminate the interview at any time;

(E) if he is 15 years of age or older at the time of the violation of a penal law of the grade of felony the juvenile court may waive its jurisdiction and he may be tried as an adult; and

(F) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present. The magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met.

The child must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement and sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officer or prosecuting attorney and determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights.

Tex.Fam.Code Ann. § 51.09(B)(1) (A–F) (Vernon Supp.1982–1983).

The appellant's basic contention is that the certifications signed by Judge McKay at the time the appellant signed his confession did not state that the appellant *intelligently* made the confession. He contends that such requirement makes the appellant's confession inadmissible because it does not meet the requirements of the Texas Family Code.

The admonitions and certifications made by Judge McKay are as follows:

(1)

You may remain silent and not make any statement at all;

Any statement you make may be used in evidence against you;

Prior to any questioning or during the questioning;

If you are unable to employ an attorney you have the right to have an attorney to counsel with you prior to or during any interviews with peace officers or attorneys representing the State;

You have the right to terminate the interview at any time;

If you are 15 years of age or older at the time the violation of a law of the grade of felony, the juvenile may waive his jurisdiction and you may be tried as an adult.

Above statutory warning given by Judge _____, in _____, Harris County, Texas on the _____ day of _____, 1978, at _____ A.M./P.M.

(2)

On this day, _____ (Name) _____ (Race) _____ (Sex) ____ (Age), personally appeared before me in the custody of _____ _____ (Peace Officers) of _____ Harris County, Texas.

I, _____, the Undersigned magistrate gave the said arrested person the statutory warnings required by Section 51.09 of the Texas Family Code, Title III. I hereby certify that I have examined _____ outside the presence and independently of any law enforcement officer or any prosecuting attorney and have determined that this person understands the nature and content of the statement and has knowingly and voluntarily waived his statutory rights.

### (3)

At the end of appellant's confession the following statement was typed and signed:

> This statement was signed by _____ in my presence on _____ day of _____ 1978, at _____ o'clock ___.M., at which time no law enforcement officer or prosecuting attorney was present. I am fully convinced that this person understands the nature and contents of this statement, and further, that this person is signing this statement voluntarily.

At the suppression hearing Judge McKay testified that he personally gave the appellant the statutory warnings. He stated that he was not an expert in juvenile matters and when he started to give the appellant the warnings in front of the officers, the officers interrupted him and warned him that the statute required that they be outside when the admonishments were given. He stated that at this time he talked with the appellant privately long enough to satisfy himself that the appellant understood and spoke English and that the appellant understood the warnings. He then gave the appellant the statutory warnings. After the confession had been reduced to writing, Judge McKay again recited the statutory warnings and questioned the appellant about some of the statements in his confession to get "a feeling about his voluntariness of what he had done". After this discussion, the appellant signed the statement in front of Judge McKay.

The facts in the instant case, are similar to those in *Carter v. State,* 650 S.W.2d 793 (Tex.Cr.App.1983). In *Carter,* the juvenile's confession contained two certifications by the judge. In one certification the judge stated in his own handwriting that after an extensive examination he found the appellant to be fully competent to make a confession. The judge also signed a typed certification that the appellant knowingly waived his rights. The Court of Criminal Appeals held that together the two findings complied with the requirements that the magistrate certify an intelligent waiver of rights.

In *Carter,* the magistrate signed two certifications but in the instant case the magistrate signed three certifications. However, the averment that the appellant intelligently waived his rights was not included. Although the magistrate in *Carter* appears to have spent more time discussing the ramifications of making a confession than the magistrate did in the present case, in each case the magistrate satisfied himself that the person making the confession was able to comprehend the nature and contents of the confession being made.

In the instant case, we hold that the three certifications made by the magistrate, when considered together, are sufficient to comply with the requirements of § 51.09 of the Texas Family Code. The appellant's second ground of error is overruled.

In his third ground of error, the appellant alleges that the trial court erred in admitting his confession into evidence because it was obtained as a direct result of his illegal arrest. He asserts that the admission of his confession into evidence at trial violated the Fourth and Fourteenth Amendments of the United States Constitution as well as the Texas Constitution and Texas Code of Criminal Procedure, art. 38.23.

The appellant's contention presumes that when a minor is taken into custody without a warrant that article 14.04 Tex.Code Crim. Pro.Ann. (Vernon 1977) is applicable to the detention rather than Section 52.01 of the Tex.Fam.Code Ann. (Vernon 1975). Article 14.04 states as follows:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

Sec. 52.01 states as follows:

> (a) A child may be taken into custody:
> (1) pursuant to an order of the juvenile court under the provisions of this subtitle;
> (2) pursuant to the laws of arrest;
> (3) by a law-enforcement officer if there are reasonable grounds to believe

that the child has engaged in delinquent conduct or conduct indicating a need for supervision; or

(4) by a probation officer if there are reasonable grounds to believe that the child has violated a condition of probation imposed by the juvenile court.

(b) The taking of a child into custody is not an arrest except for the purpose of determining the validity of taking him into custody or the validity of a search under the laws and constitution of this state or of the United States.

■ The Code Construction Act, Art. 5429b–2, Tex.Rev.Civ.Stat.Ann., provides rules to aid in the construction of codes and amendments enacted pursuant to the State's continuing statutory authority. The basic purpose of the code is to assist in the clarification and guidance in the construction of the State's statutes and codes. Three principles set forth in the Code Construction Act are helpful in the resolution of the apparent conflict between art. 14.04 and sec. 52.01. These principles state that when two statutes appear to conflict, (1) construction shall be given, if possible, so that effect is given to both; (2) the more specific statute controls over the more general; (3) we are required to give some meaning to every statute. Tex.Rev.Civ. Stat.Ann. art. 5429b–2, §§ 3.01(2), 3.06 (Vernon Supp.1982–1983).

■ As the appellant was a minor, age 16, at the time of his detention, Texas Family Code § 52.01(a) is the more specific statute on the subject of when a child when may be taken into custody. Chapter 14 of the Code of Criminal Procedure pertains to criminal proceedings. This case was not a criminal proceeding at the time of appellant's arrest. Appellant was a child within the jurisdiction of the juvenile court. Tex. Fam.Code Ann. § 51.04(a) (Vernon Supp. 1982–1983).

When we apply the three principles of the code construction act set out above, it becomes apparent that art. 52.01(a) is the more specific statute pertaining to minors. By applying it to the facts of the instant case, we are giving effect to § 14.04 and

art. 5429b–2 as well as a meaningful interpretation to each statute.

■ We apply these same principles of the code construction act to an apparent conflict between the provisions of § 52.-01(a)(2) and (3) and (b). For example, § 52.01(a)(2) states that a child may be taken into custody pursuant to the laws of arrest. On the other hand, § 52.01(a)(3) states a child may be taken into custody by an officer if there are reasonable grounds to believe that the child has engaged in delinquent conduct or conduct indicating a need for supervision. Furthermore, § 52.-01(b) states that the taking of a child into custody is not an arrest except for the purpose of determining the validity of taking him into custody or determining the validity of a search under the laws and constitution of this state or the United States. As the word "or" was used between the third and fourth paragraphs of art. § 52.01(a), we are of the opinion that it was the legislative intent that a child may be taken into custody if he meets any one of the four criteria of § 52.01(a). To construe § 52.01(a) in any other manner would require this court to construe § 52.01(a)(3) to have no force and effect. We say this because "the laws of arrest" requirement as set forth in § 52.01(a)(2) requires that a warrant be obtained unless (1) there is satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and (2) that the offender is about to escape. These standards cannot be met by § 52.01(a)(3). We hold that because the provisions of § 52.-01(a) are not stated in the conjunctive, the legislative intent was to apply the provisions in the disjunctive. That is to say, each provision in § 52.01(a) is a separate and distinct manner in which a child may be taken into custody. This construction gives some meaning to each paragraph of § 52.-01(a).

This resolution between two Texas statutes still does not resolve the appellant's further contention that his arrest was illegal because it violated the fourth and fourteenth amendments of the United States

Constitution and Art. I, Sec. 9 of the Texas Constitution.

The fourth amendment has no application in this case because an officer acting with probable cause to arrest may do so without a warrant without violating the fourth amendment. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). *Watson* appears to remove any fourth amendment requirement for an arrest warrant, once probable cause is established. This distinguishes the arrest requirements of the fourth amendment from the search requirements, in which no amount of probable cause will justify a warrantless search, unless exigent circumstances make it difficult to obtain a warrant in time to make the search, or other recognized exceptions exist. *Kolb v. State*, 532 S.W.2d 87 (Tex.Cr.App.1976). One of the recognized exceptions is that an arrest warrant is required to arrest a suspect in his home. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In the instant case, the appellant was not arrested in his home but was apprehended in his driveway, hence *Payton* does not control this case. We hold that the fourth amendment has no application to the facts of this case.

The appellant's claim that the admission of his confession is violative of due process or the equal protection clause of the fourteenth amendment of the United States Constitution is also without merit. This contention presumes that the appellant's arrest was illegal and that minors must receive the same or greater protection under the law than adults. Although it has been said that minors receive the best of both worlds in the criminal justice system, this is not always true. For instance, a juvenile has no right to a jury trial under the United States Constitution in a juvenile adjudicative proceeding in a juvenile court. *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Likewise, a juvenile can be convicted in a juvenile proceeding on the uncorroborated testimony of an accomplice witness, while, in Texas, corroboration is required to support the con-

viction of an adult. *In re S.J.C.*, 533 S.W.2d 746 (Tex.1976), *cert. denied, sub nom. Chavez v. Texas*, 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976).

The appellant, being a minor, was detained pursuant to the provisions of the family code. One of the primary purposes of that code is to remove from children "the taint of criminality and the consequences of criminal behavior." Tex.Fam. Code Ann. § 51.01(3) (Vernon 1975). Thus, the legislature may enact laws that exceed constitutional requirements for adults but not require the same standards for children. In Texas, the arrest requirements for adults are more stringent than those required by the United States Constitution. *Compare, U.S. v. Watson, supra,* with Tex.Code Crim. Pro.Ann. art. 14.04. However, the detention requirements of a minor in Texas are less stringent than those required of adults, yet they meet the requirements of the United States Constitution's Fourth Amendment. *U.S. v. Watson, supra.* Considering the purpose for which the Texas Penal Code and the Texas Family Code were enacted, we hold that the detention of the appellant did not violate either the due process or equal protection clause of the fourteenth amendment of the United States Constitution.

The appellant next asserts that his confession should have been excluded from evidence because its admission is violative of art. 1, § 9 of the Texas Constitution. Section 9 provides as follows:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizes or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

The appellant has directed us to no authority which holds that the Texas Constitution grants broader protection from illegal arrest than does the United States Constitution. After the appellant and state had filed their briefs in this case, the Court of

Criminal Appeals held that Article I, Section 9 of the Texas Constitution should be interpreted in harmony with the fourth amendment. *Brown v. State,* 657 S.W.2d 797 (Tex.Cr.App.1983). Applying the *Brown* interpretation to our factual situation, we hold that the appellant's detention was not violative of Article I, Section 9 of the Texas Constitution. Thus, the appellant's confession was admissible.

The appellant's third ground of error is overruled.

■ The appellant asserts in his fourth and final ground of error that the trial court erred in admitting into evidence, the cigarette lighter which was recovered at the scene of appellant's arrest. He argues that the lighter is a fruit of his unlawful arrest and was therefore inadmissible. He cites as authority *People v. Howard,* 50 N.Y.2d 583, 430 N.Y.S.2d 578, 408 N.E.2d 908 (1980). In *Howard* the New York court held that where the arrest is illegal, an object thrown away while an arrest is being made is not admissible.

We cannot agree with the appellant's contention for two reasons. First, we have held that the appellant's arrest was lawful. Second, The Texas Court of Criminal Appeals has adopted a position contrary to that adopted by the New York Court of Appeals in *Howard.* The Texas Court of Criminal Appeals has held that a defendant who throws property away, has abandoned that property. Therefore, the officer's activity is not a search and seizure. *See, Gonzales v. State,* 461 S.W.2d 408 (Tex.Cr. App.1970); *Jimenez v. State,* 421 S.W.2d 910 (Tex.Cr.App.1967), *cert. denied,* 391 U.S. 954, 88 S.Ct. 1859, 20 L.Ed.2d 868 (1968). That court has also held that the seizure of property thrown away in view of police is not the fruit of the initial stop even if the initial stop was illegal. *Gonzales v. State, supra.* We hold that the trial court did not err in permitting into evidence the victim's cigarette lighter.

The judgment of the trial court is affirmed.