Michael **VASQUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 053–84.

Court of Criminal Appeals of Texas, En Banc.

Oct. 2, 1991.

Allen C. Isbell, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft and George Lambright, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

CLINTON, Judge, dissenting on Denial of Appellant's Motion for Rehearing.

Appellant was a juvenile when taken into custody by law enforcement officers without an arrest warrant but with probable cause to believe he had committed the offense of capital murder; he was tried as a "certified adult" but denied his claim that some evidentiary materials proffered by the State were fruits of an illegal warrantless arrest. The court of appeals affirmed the judgment of conviction. *Vasquez v. State*, 663 S.W.2d 16 (Tex.App.—Houston [1st] 1983); in a plurality opinion this Court affirmed that judgment. *Vasquez v. State*, 739 S.W.2d 37 (Tex.Cr.App 1987).[1]

In his motion for rehearing appellant presents two grounds, the first of which (as paraphrased) directly challenges the reasoning of the plurality opinion in affirming the judgment, *viz:*

The opinion is wrong in holding that *a 'certified adult' is not entitled to the* *protection of Article 14.04, V.A.C.C.P.* from a warrantless arrest that is vouchsafed to every adult.

Motion at 2. We should grant rehearing solely on that ground.[2]

"A minor has the same constitutional right to be secure in his person from unreasonable seizures as has an adult. The 14th Amendment and the Bill of Rights protect minors as well as adults. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428 [18 L.Ed.2d 527] (1967); *Continental Casualty Co. v. Miller*, 135 S.W.2d 501 (Waco Civ.App.1940, n.w.h.)."

*Ciulla v. State*, 434 S.W.2d 948, at 950 (Tex.Civ.App.—Houston [1st] 1968), no writ history; *Lanes v. State*, 711 S.W.2d 403, at 405 (Tex.App.—Beaumont 1986), reversed on other grounds, *Lanes v. State*, 767 S.W.2d 789 (Tex.Cr.App.1989) (constitutional probable cause requirements apply fully to juvenile arrest). *In re R.C.M. v. State*, 660 S.W.2d 552, at 553 (Tex.App.—San Antonio 1983), refused n.r.e.

As with those constitutional rights, so also Article 14.04, V.A.C.C.P., like the three

---

1. The court of appeals was urged by the State to adopt the simple notion that V.T.C.A. Family Code, § 52.01(a)(3), is "a basis [for taking a juvenile into custody] independent from the laws of arrest." State's Appellate Brief at 6–7. Instead, the court of appeals resorted to the Code Construction Act to resolve what it saw as "an apparent conflict between art. 14.04 and sec. 52.01," examined the respective statutes, found them in conflict, opined that "*it was the legislative intent* that a child may be taken into custody if he meets any one of the four criteria of § 52.01(a)," otherwise V.T.C.A. Family Code, § 52.01(a)(3) would "have no force and effect" because the standards under " 'the laws of arrest' requirement [incorporating requisites of Article 14.04] cannot be met by § 52.01(a)(3)." *Vasquez*, 663 S.W.2d, at 23.

Taking a different approach the plurality opinion on original submission disagreed, *viz:*
"[For stated reasons], we do not find the two statutes to be in irreconcilable conflict so as to require the type of construction used by the Court of Appeals below. [citation omitted]. To the contrary, we find that *the Legislature has evinced its intent* to distinguish the 'arrest' of juveniles from that of adult offenders as shown by the pertinent juvenile provision. Cf. *Continental Casualty Company v. Miller*, 135 S.W.2d 501 (Tex.[Civ.]App.—Waco 1940)."

*Vasquez*, 739 S.W.2d, at 43. Additionally or alternatively, the plurality went on to say that under the Code Construction Act, "we would agree that Article 52.01 [sic], because it addresses the custodial detention of *juvenile* offenders, is the more specific enactment and controls over Article 14.04 of the Criminal Code." *Ibid.* (emphasis in original) Therefore, the plurality concluded that "*Article 14.04, supra, does not apply to the warrantless 'arrest' of a juvenile offender;*" since he was detained under § 51.02, appellant was not "*entitled* by statute to the same protections his adult counterpart would expect as a detainee in a criminal prosecution." *Ibid.*

(All emphasis here and throughout is supplied by the writer of this opinion unless otherwise indicated. It is just another one of those curious anomalies that the opinions on original submission were published notwithstanding motion for rehearing had been timely filed and was then pending consideration.)

2. The other ground seeks to raise an issue not heretofore presented in this cause, invoking a recent decision of the same court of appeals to the effect that the district attorney of Harris County is not lawfully authorized "*to prosecute a civil matter*" such as the certification proceeding held in the instant cause. We may decline to address that ground. See *Gambill v. State*, 692 S.W.2d 106 (Tex.Cr.App.1985).

preceding articles authorizing the warrantless arrest of an "offender," is no respecter of persons. Regardless of age, one is arrested "when [one] has been actually placed under restraint or taken into custody by an officer[.]" Article 15.22, V.A.C.C.P.

The question in this cause is whether a "child" as defined in V.T.C.A. Family Code, § 51.02(1), is stripped of those rights and protections in a criminal prosecution for a felony offense after waiver and transfer proceedings in a juvenile court, all flowing from a warrantless arrest by law enforcement officers for an offense arising from the same transaction. There is a dearth of caselaw under previous legislation addressing this issue, probably because a child was believed not to possess many rights in juvenile proceedings until the Supreme Court confirmed a broad panoply of protections in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). See, e.g., *Ciulla v. State*, 434 S.W.2d 948 (Tex.Civ.App.—Houston [1st] 1968), no writ history (illegal warrantless arrest of juvenile for traffic violation tainted fruits of ensuing search); *Leach v. State*, 428 S.W.2d 817 (Tex.Civ.App.—Houston [14th] 1968), no writ history (unwarned inculpatory admissions not admissible); *Choate v. State*, 425 S.W.2d 706 (Tex.Civ.App.—Houston [1st] 1968), no writ history (inculpatory statements before waiver of privilege against self incrimination inadmissible); cf. *Ballard v. State*, 192 S.W.2d 329 (Tex.Civ.App.—Amarillo 1946), no writ history; *In re Fisher*, 184 S.W.2d 519 (Tex.Civ.App.—Amarillo 1944), no writ history. Therefore, the answer must be found in Title 3 of the Family Code in light of legislative history and developments leading to its enactment.[3]

V.T.C.A. Family Code, § 52.01(a), expressly authorizes a law enforcement officer—"a peace officer as defined by Article 2.12, [V.A.C.C.P.]," id., § 51.02(8)—to take

3. Once the Legislature treated a "delinquent child" pursuant to provisions in the code of criminal procedure. See Title 16—Delinquent Child, C.C.P.1925, particularly article 1807, Arrest and custody. Under that system it was held a peace officer is not authorized to make a warrantless arrest of a juvenile for an offense except as provided by former articles 212–215, C.C.P.1925, predecessors to Articles 14.01–14.04, V.A.C.C.P. *Continental Casualty Co. v. Miller*, 135 S.W.2d 501, at 502 (Tex.Civ.App.—Waco 1940) no writ history. Still, the legislation "was designed for the welfare of juvenile offenders.... It is remedial not punitive. * * * * [I]t should be construed liberally, except in so far as it purports to restrain the liberty of the child, in which case it should be strictly construed." *Phillips v. State*, 20 S.W.2d 790, at 791 (Tex.Cr.App.1929); also see *Davis v. State*, 113 Tex.Cr.R. 429, 21 S.W.2d 1068 (Tex.Cr.App.1929) (On Motion for Rehearing, 21 S.W.2d at 1069); *Morgan v. State*, 114 Tex.Cr.R. 434, 25 S.W.2d 842 (1930).

By Acts 1943, 48th Leg., Ch. 204, p. 313, the Legislature repealed, *inter alia*, all articles in Title 16, supra, id. § 24, and to better effectuate essentially the same traditional public policy concerns, changed "the method for handling delinquent children from the present criminal procedure to guardianship [proceedings]," *id*, at 313 (caption) and at § 25 (emergency clause). For an analysis and full discussion of the Act, codified as Article 2338–1, V.A.C.S., see *Dendy v. Wilson*, 142 Tex. 460, 179 S.W.2d 269 (1944), holding *inter alia*, that the statute invested juvenile courts with "exclusive jurisdiction over children within the age limits prescribed by law." *Id.*, 179 S.W.2d at 273–274. The Act contem-

plated several manners by which a juvenile court obtained jurisdiction over the person of an alleged "delinquent child." See §§ 7, 8, 9, and 10. As to an initial arrest, in keeping with the definition of "delinquent child," *id.*, at 272, § 11 provided in pertinent part, *viz:*

"Any peace officer ... shall have the right to take into custody any child who is found violating any law or ordinance, or who is reasonably believed to be a fugitive from his parents or from justice, or whose surroundings are such as to endanger his health, welfare, or morals. The child shall forthwith be brought to the Judge [of Juvenile Court] ..., provided that no child shall be taken before a Police Court or Justice of the Peace Court."

In this connection, §§ 5 and 13(3) of the original Act sought to grant to the Juvenile Court exclusive jurisdiction over a delinquent child until age twenty one, expressly mandating "nor shall any child be charged with or convicted of a crime in any court." The former penal code, however, had long permitted prosecution of a juvenile above age thirteen, but one under seventeen could not receive the death penalty. See articles 30 and 31, P.C.1925. The Supreme Court and this Court resolved the contradictions in favor of criminal prosecution after an accused became seventeen, even though he committed the offense at a juvenile age. *Dendy v. Wilson*, supra, at 275; *Dearing v. State*, 151 Tex.Cr.R. 6, 204 S.W.2d 983, at 985–986 (1947). But the jurisdictional issue was far from being settled. The Legislature amended the Act to permit a juvenile court to waive its jurisdiction to the appropriate district court and to certify a child sixteen or older for proper criminal pro-

a child into custody without an order of a juvenile court in two situations, *viz:*

"(2) pursuant to the laws of arrest;

(3) ... if there are reasonable grounds to believe that the child has engaged in delinquent conduct or conduct indicating a need for supervision;"

At the time appellant was taken into custody the conduct described in subsection (3) was prescribed in terms set out in the margin.[4]

As to subsection (a)(2), *Dawson, op. cit., ante,* n. 3, explains that means "a child may be taken into custody under the same circumstances that a law-enforcement officer is *authorized to arrest an adult." Id.,* at 540. See *In re S.E.B.,* 514 S.W.2d 948, at 950 (Tex.Civ.App.—El Paso 1974) no writ history (upholding warrantless arrest of juvenile under Article 14.01, V.A.C.C.P.). Manifestly, the law enforcement officers took appellant into custody "pursuant to the laws of arrest," and the only germane purported authority for doing so is Article 14.04, supra.[5]

As to subsection (a)(3), *Dawson* points out:

"... The United States Constitution requires certain evidentiary bases to exist

---

ceedings in a court having jurisdiction of the offense, if committed by adult. Acts 1965, 59th Leg., Ch. 577, p. 1256, § 3. The Court professed some difficulty in understanding that which the Legislature intended, and ultimately held portions of the amendatory act invalid. *Foster v. State,* 400 S.W.2d 552, at 556–558 (Tex.Cr.App. 1966). The Legislature tried again with Acts 1967, 60th Leg. Ch. 475, p. 1082, §§ 2–7, declaring its purposes were, *inter alia* "to give the juvenile court exclusive jurisdiction in cases [involving delinquent] children below the age of 15 years;" to provide ... for the juvenile court to waive jurisdiction and transfer children for criminal prosecution in cases involving offenses committed by children 15 years of age or older; and "to prevent children being proceeded against in both the juvenile court and district court ... for offenses committed while of juvenile age," actions deemed necessary because of the *Foster* decision. See § 1, quoted in 7A Vernon's (1971) following Article 2338–1. To further make that point, the same act also conformably amended article 30, P.C.1925. This time the Court was more receptive to the Legislature. See *Ex parte Trahan,* 591 S.W.2d 837, at 841–842 (Tex.Cr.App.1979); but also see *Ex parte Morgan,* 595 S.W.2d 128 (Tex.Cr.App 1980) (Clinton, J., dissenting at 133). Section 6 of the 1967 Act provided: "Upon transfer of the child for criminal proceedings, *he shall be dealt with as an adult and in accordance with the Code of Criminal Procedure."*

Of course, effective September 1, 1973, Title 3 of the Family Code repealed and replaced former article 2338–1. The same basic public policy considerations implemented in previous statutory provisions are more elaborately expressed in § 51.01. As in article 2338–1, it continued to provide, "On transfer of the child for criminal proceedings, he shall be dealt with as an adult and in accordance with the Texas Code of Criminal Procedure, 1965." § 54.02(h). A comprehensive explication of legislative intent, section by section, is found in Dawson, *"Delinquent Children and Children in Need of Supervision" Draftsman's Comments to Title 3 of the Texas*

*Practice Code,* 5 Tex.Tech L.Rev. 509 (1974); the author being Robert O. Dawson, Professor of Law, University of Texas, who drafted the product submitted to the Legislature after consulting and working some five years with The Juvenile Law Committee of the State of Texas Bar of Texas Family Law Council. *Dawson,* supra, at 509–510. Another is Steele, *Delinquent Children and Children in Need of Supervision,* 13 Tex. Tech L.Rev. 1145 (1982); see also Dawson, *Prosecution of Juveniles in Texas Criminal Courts: Eliminating the Jurisdictional Requirement of an Examining Trial,* 23 Hous.L.Rev. 1067 (1986).

4. Under V.T.C.A. Family Code, § 51.03(a), delinquent conduct included only conduct, other than a traffic offense, that violates:

"(1) *a penal law of this state* punishable by imprisonment or by confinement in jail; or

(2) a reasonable and lawful order of a juvenile court...."

§ 51.03(b) enumerated particular conduct indicating a need for supervision, *viz:*

"(1) conduct, other than a traffic offense or other offense included in Subdivision (5) of this subsection, that on three occasions violates either of the following: [penal laws of grade of misdemeanor punishable by fine only or penal ordinances of any political subdivision];

(2) the unexcused voluntary absence of a child ... from school;

(3) the voluntary absence of a child from his home without the consent of [parent or guardian]....

(4) conduct that violates the laws of this state prohibiting [DWI or DIUD];

(5) conduct prohibited by city ordinance or by state law involving [sniffing paint *et cetera*]."

5. The facts and circumstances surrounding the offense and events leading officers to appellant are similarly recounted in both the opinion below, 663 S.W.2d 16, at 18–19, and the plurality opinion on original submission, 739 S.W.2d 37, at 39. The officers not only had a description but were given the name of the suspected assail-

before an adult may be taken into custody for criminal conduct. Subsection (a)(3) is intended to *authorize* taking a child into custody for *noncriminal* conduct indicating a need for supervision if these same bases are met."

*Id.,* at 540.[6]

The next subsection of § 52.01 is subsection (b), *viz:*

"(b) The taking of a child into custody is not an arrest *except* for the purpose of determining the *validity of taking him into custody* or the validity of a search under the *laws* and constitution of this state or of the United States."

*Dawson* derived this from and says it is substantially the same as the provision in section 13 of the Uniform Juvenile Court Act.

"... It is designed to shelter the child from the stigmatizing effects of an arrest, while providing him with the legal protections that surround the arrest of adults. These include *the right to exclude evidence seized pursuant to an unlawful arrest....*"

*Id.,* at 540.

In this jurisdiction the rationale and purpose of "delinquent child" laws have always been to promote and to protect the care, safety and welfare of the child consonant with interests of the state. See n. 3, *ante.* And, just as decisions on the civil side under prior laws insisted, *ante,* at 752, so also § 51.01(5) dictates that Title 3 shall be construed "to provide a simple judicial procedure ... in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced." But once the Legislature determined that the public interest was not being served by vesting juvenile courts with exclusive jurisdiction over delinquent children, and finally resolved the contradictions in concurrent judicial authority to deal with children charged with serious penal offenses in favor of a waiver by the juvenile court and transfer of the "certified adult" to the criminal court, the erstwhile "delinquent child" was moved to a judicial environment where other policy considerations somewhat shifted the balance of interests involved.

The Texas juvenile justice system contemplates that where the prescribed preliminary investigation results in a determination that further proceedings are authorized and warranted, a prosecuting attor-

---

ant, Michael Vasquez, by the manager of the restaurant where appellant was formerly employed, but who was unable to find his address for the officers. The next day they went to the Houston Police Department and discovered a file under that name with a photograph of the named person, and went to the address indicated therein. At that location they were directed *to* the house where appellant was living and were told that he was not there but would return shortly in a particularly described truck. They knew appellant had stabbed the victim with a large knife, and in the driveway related to the house they found an empty sales box for a hunting knife. They waited over an hour until appellant arrived in the described truck and wearing a kind of shirt previously described; once out of the truck they saw he had a large hunting knife in a sheath on his belt; asked if he were Michael Vasquez, appellant said he was. Chief Jones seized the knife from the person of appellant and took him to and put him in the back seat of a Jones' police car.

Obviously, appellant had been arrested and was then and there in custody—as the court of appeals determined, 663 S.W.2d, at 24 (appellant "apprehended in his driveway"); the plural-

ity called his presence in the police car "perhaps temporary detention," 739 S.W.2d, at 45, n. 4, although there is nothing in either opinion to suggest the law-enforcement officers contemplated any such thing.

6. The State's position is that the officers made a "Terry *stop*" while "pursuing an investigation and were in the process of trying to question appellant *to* determine if he was *the* Michael Vasquez who was a suspect in this case, when the appellant threw away a lighter belonging to the deceased thereby providing the officers with reasonable cause to believe the appellant had engaged in *delinquent conduct.*" State's Appellate Brief, at 7–8. However, the court of appeals found that appellant was "apprehended in his driveway," 663 S.W.2d, at 24; although considering "probable cause to have 'ripened' with appellant's admission of his identity," the plurality of this Court was content to characterize his presence in the police car as an "initial, perhaps temporary detention," 739 S.W.2d at 45, n. 4. Applying the statutory definition in Article 15.- 22, V.A.C.C.P., however, the court of appeals correctly determined that law-enforcement officers arrested appellant in the driveway, before placing him in the police car. See *ante,* at 752 and at 753, n. 5.

ney must elect whether to file a petition for an adjudication or transfer hearing. § 53.-04(a); *Dawson*, at 563. In the latter proceeding, as applicable here, the juvenile court may waive its jurisdiction and transfer a child for criminal proceedings if the child is alleged to have violated a penal law of the grade of felony when he was fifteen years of age or older at the time of the offense "and no adjudication hearing has been conducted concerning that offense," and after hearing the court determines that for reasons prescribed "the welfare of the community requires criminal proceedings." § 54.02(a).[7]

A transfer hearing should be held first because an adjudicatory hearing bars trial for same crime on transfer. *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). An adjudication hearing must honor certain rights and privileges guaranteed to the child, *viz:*

"...  An extrajudicial statement which was obtained without fulfilling the requirements of this title *or* of the constitution of this state or the United States, may not be used in a adjudication hearing.  * * * *  Evidence illegally seized or obtained is inadmissible in an adjudication proceeding."

§ 54.03(e). Those same judicial decisions reviewing alleged errors in adjudication hearings, *ante*, at 752, demonstrate these rights are to be enforced in an adjudication proceeding; see also *Matter of D.M.G.H.* 553 S.W.2d 827 (Tex.App.—El Paso 1977),

no writ history (failure to comply with § 52.02(a) taints confession).  But when waiver of jurisdiction and transfer preempt adjudication, there is nothing in the legislative history to suggest an intent that a juvenile lose rights and privileges vouchsafed in an adjudication hearing when transferred to a district court for criminal prosecution as an adult.  To the contrary, as the draftsman himself has reported, subsection (b) of § 52.01 is designed to provide juveniles with "the legal protections that surround the arrest of adults, [including] the right to exclude evidence seized pursuant to an unlawful arrest," *Dawson*, supra, at 540.  Without an adjudication proceeding, however, the only forum in which to claim those protections is the criminal court.  And, as this Court has held, "Upon his transfer for criminal proceedings, treating appellant as an adult in accordance with V.T.C.A. Family Code, § 54.02(h), means that his confession, if illegally taken, could not have been admitted against him in his criminal trial, consistent with Article 38.23, V.A.C.C.P." *Comer v. State*, 776 S.W.2d 191, at 196 (Tex.Cr.App.1989); *Griffin v. State*, 765 S.W.2d 422, at 426–427 (Tex.Cr.App.1989); *Lovell v. State*, 525 S.W.2d 511, at 514–515 (Tex.Cr.App.1975).

Therefore, disagreeing with the plurality opinion, I would find "that the Legislature has [NOT] evinced its intent to distinguish the 'arrest' of juveniles from that of adult offenders as shown by the pertinent juvenile provision," 739 S.W.2d at 43, and conclude that Article 14.04 is included under

7.  By Acts 1987, 70th Leg., Ch. 140, § 1, effective Sept. 1, 1987, the Legislature inserted "there is probable cause to believe that the child before the court committed the offense alleged and that" the welfare of the community et cetera. See *In re R.P. v. State*, 759 S.W.2d 181 (Tex. App.—San Antonio 1988), no writ history.

There is no statutory requirement that the juvenile court decide whether the child initially was taken into custody illegally, thus tainting fruits therefrom.  On the civil side appellate courts consistently held that a transfer proceeding is not a proper forum to determine questions of admissibility of evidence *in futuro*—an adjudication hearing or trial on the merits. *In the Matter of M.A.B.*, 641 S.W.2d 621 (Tex. App.—Corpus Christi 1982), no writ history (*In re Gault* inapplicable to transfer proceeding); *In re Y.S.*, 602 S.W.2d 402, at 404 (Tex.Civ.App.—

Amarillo 1980), no writ history (claims concerning violation of statutory or constitutional standards premature because they apply to statements used solely for adjudication purposes); *K.W.M. v. State*, 598 S.W.2d 660, at 661 (Tex.Civ. App.—Houston [14th] ), no writ history (hearing not adjudicatory in nature, confession relevant to likelihood of grand jury indictment); *Matter of P.A.C.*, 562 S.W.2d 913, at 915 (Tex.Civ.App.— Amarillo 1978), no writ history (hearing not trial of merits); *B.L.C. v. State*, 543 S.W.2d 151, at 153–154 (Tex.Civ.App.—Houston [14th] 1976), writ refused n.r.e. (not an adjudicatory proceeding, confession is "evidence" bearing only on possible grand jury action); but see *Welch v. State*, 538 S.W.2d 442, at 446 (Tex.Civ.App.— Waco 1976), writ refused n.r.e. (confession voluntary under "totality of circumstances" test).

"the laws of arrest" within contemplation of § 52.01(a)(2), supra.

Accordingly, the motion for rehearing should be granted. Because the Court does not, I respectfully dissent.

BAIRD, OVERSTREET and MALONEY, JJ., join.