**Michael VASQUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 053–84.

Court of Criminal Appeals of Texas, En Banc.

Oct. 21, 1987.

Larry P. Urquhart, court appointed on appeal, Brenham, Allen C. Isbell, on appeal only Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft and George Lambright, Asst. Dis-

trict Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

After appellant was certified as an adult, he was convicted of capital murder and assessed a mandatory life sentence. V.T. C.A., Penal Code, Section 8.07(d). On direct appeal, he contended that his confession and a monogramed cigarette lighter belonging to the deceased were improperly admitted into evidence as both were fruits of an illegal warrantless arrest. The Court of Appeals for the First Supreme Judicial District affirmed the conviction holding that the warrantless detention of appellant under V.T.C.A., Family Code, Section 52.01 did not violate either federal or state constitutional and statutory guarantees or requirements. *Vasquez v. State,* 663 S.W.2d 16 (Tex.App.—Houston [1st] 1983). We granted appellant's petition for discretionary review to determine whether Section 52.01 impermissibly entitles a juvenile certified to be prosecuted as an adult fewer protections under the laws of arrest and search than other adults coming within the purview of Chapter 14 of the Texas Code of Criminal Procedure. We will affirm.

The record reflects that on the evening of October 3, 1978, Lynn Palmer and a friend, Mary Dabney, left a Houston area restaurant and proceeded to a parking lot behind the restaurant to obtain their car. Dabney testified at trial that a young Latin American male appeared to be following them but when the two women turned to look the man turned off in another direction. Reaching the car, Dabney was in the process of unlocking her door when she heard Palmer scream, "Mary, he stabbed me. I'm bleeding." Dabney looked up to see Palmer at the rear passenger side of the car holding her stomach. A Latin male came around the rear of the driver's side of the vehicle toward Dabney brandishing a large knife and demanded her purse. Dabney gave the man her purse and he ran off.

While waiting for an ambulance to take Palmer to the hospital, Dabney gave a description of the assailant to a restaurant employee who, along with other employees, later informed the police that the description matched that of appellant, a former bus boy at the restaurant. Appellant was placed at the scene of the crime by several employees a short time before the incident took place. At trial, Dabney was not able to positively identify appellant as the assailant.

Detective Rush, of the Hedwig Village Police Department, testified that he arrived at the restaurant within one half hour after the incident occurred. He was directed by other officers on the scene to the hospital where Palmer had been taken. Due to Palmer's condition, Rush was denied permission to interview her but was able to interview Dabney. She gave Rush a detailed description of the assailant and the clothing he was wearing at the time of the attack.

Rush obtained appellant's name from another officer who had in turn been given appellant's name by the restaurant manager as matching Dabney's physical description of the assailant. The following afternoon Rush and Chief Jones, of the Hedwig Village Police Department, located a possible address where appellant might be found. A young man living a few houses away from that address directed the officers to what was later determined to be the residence of appellant's girlfriend and also informed the police that appellant would be back shortly in a particular model truck.

Rush and Jones set up surveillance on the house to await appellant's return. Appellant arrived in the described truck, accompanied by another male, two females and a baby. The officers approached the group as they exited the vehicle and identified themselves as police officers. Appellant matched the physical description given by Dabney the night before, was wearing similar clothing and wore a large hunting knife on his belt. Contrary to the loud exhortations of his male acquaintance, appellant admitted his identity to the officers.

Due to the developing hostile situation, the officers then separated appellant from the other individuals who were becoming verbally abusive. Jones relieved appellant

of his knife and escorted him to the police car. As appellant was placed into the rear of the vehicle by Jones, Rush observed appellant toss a small object into another yard. Rush retrieved the object, a gold cigarette lighter bearing the initials L.R.P. After seeing Rush retrieve the lighter, appellant volunteered the statement that he knew they "had him" because of the lighter. At trial Dabney identified the lighter as belonging to Palmer.

Rush and Jones called for additional backup to quiet what had become an explosive situation. After other units arrived, the two officers left with appellant, advising him that he was under "arrest" and reading him his juvenile rights.[1] Despite the warnings, appellant talked freely about the incident on the way to the police station, even pointing out the service station where he had dumped Palmer and Dabney's purses after looting them. Jones was able later to locate the purses based on appellant's statements and a statement taken from Dabney the following morning.

At the Hedwig Village police station, a magistrate gave appellant the required juvenile warnings and determined the juvenile's competency outside the presence of any officers. Appellant then dictated a confession to Detective Rush. After the confession was reduced to writing, the magistrate, in private, again gave appellant the required warnings and discussed appellant's statement with him, after which appellant signed the confession. See V.T.C.A., Family Code, Section 51.09(b).

Appellant was twice served with notice of a transfer hearing, the second summons giving notice that Palmer had died of injuries sustained in the attack and the corresponding change of allegations in the State's transfer petition from aggravated robbery to capital murder. The juvenile court subsequently certified appellant as an adult and a proper transfer order to State district court was entered, effectively "arresting" appellant as an adult suspect. See V.T.C.A., Family Code, Section 54.02(h).

At trial, appellant's confession and the cigarette lighter retrieved at the scene of appellant's detention were admitted into evidence over defense objection. On direct appeal, appellant argued that the confession and lighter should have been suppressed as both were fruits of his illegal warrantless arrest. Appellant's claim rested on the proposition that, as he was tried as an adult, his initial detention had to meet the requirements of Article 14.04 of the Texas Code of Criminal Procedure but that the State failed to demonstrate that the arrest came within that statutory exception to the general warrant requirement.

The appeals court first determined that an apparent conflict exists between Article 14.04, supra, and Family Code Section 52.01. Construing the two provisions with regard to the Code Construction Act, the appeals court held Section 52.01, supra, to be the more specific statute pertaining to the arrest of minors. *Vasquez v. State*, supra; see V.T.C.S. Government Code, Section 311.001 et seq. Applying the same construction principles to what it termed an apparent conflict between the provisions of Section 52.01(a)(2) and (3) and (b), supra, the appeals court was of the opinion that a child may be taken into custody if he meets any one of the four criteria of Section 52.01(a), supra. Finally, turning its attention to appellant's contention that his arrest violated the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Texas Constitution, that court concluded that no Fourth Amendment violation occurred since there was probable cause for the arrest, the less stringent detention requirements for children did not violate principles of equal protection or due process, and that appellant was entitled to no greater protection under Article I, Section 9 of the Constitution than under the Fourth Amendment. *Vasquez v. State*, supra, citing *Brown v. State*, 657 S.W.2d 797 (Tex.Cr.App.1983).

In his sole ground for review, appellant contends that the appeals court erred in determining that a juvenile certified to be prosecuted as an adult "is entitled to fewer

---

1. The record reflects that the investigating officers had determined appellant to be a juvenile on the morning before appellant was taken into custody.

protections under the law of arrest and search than a similarly situated adult" by virtue of V.T.C.A., Family code, Section 52.01. Appellant correctly points out that, had he been arrested as an adult, his warrantless seizure would have been in violation of Article 14.04 of the Code of Criminal Procedure since the State was unable to demonstrate that some enumerated exception to the general warrant requirement applied.

At first blush appellant's argument appears meritorious, bringing into question fundamental issues of due process and equal protection. Upon further reflection, however, it becomes apparent that appellant's claim is based upon a faulty premise. Appellant would have this Court examine his "arrest" as a *juvenile* not at the time he was taken into custody but only after he was certified as an adult and the cause transferred to criminal district court. In arguing that he was denied the protection afforded *other* adults, appellant ignores the reality that his detention arose outside the adult criminal justice system.

Article 14.04, supra, states:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

In comparison with Article 14.04, V.T. C.A., Family Code, Section 52.01, provides, in pertinent part:

"(a) A child may be taken into custody:
"(1) pursuant to an order of the juvenile court under the provisions of this subtitle;
"(2) pursuant to the laws of arrest;
"(3) by a law-enforcement officer if there are reasonable grounds to believe that the child has engaged in delinquent conduct or conduct indicating a need for supervision; or
"(4) by a probation officer if there are reasonable grounds to believe that the

child has violated a condition of probation imposed by the juvenile court.
"(b) The taking of a child into custody is not an arrest except for the purpose of determining the validity of taking him into custody or the validity of a search under the laws and constitution of this state or of the United States."

Restated, the issue before us is whether Article 14.04, supra, applies to the warrantless detention and taking into custody of a juvenile suspect and, if it does not apply to juveniles, whether a juvenile situated in the shoes of appellant is denied equal protection or due process of law.

■ The rule favoring arrest with warrant is not constitutionally mandated but is a product of legislative action. See Article 15.01, et seq., V.A.C.C.P. Article I, Section 9 of the Texas Constitution merely requires that an arrest conducted pursuant to a warrant shall be based upon probable cause.

Along with Article 14.04, supra, the remainder of Chapter 14 of the Code of Criminal Procedure provides certain enumerated exceptions to the general warrant requirement mandated by Chapter 15 of the Code. See Article 15.01, et seq, V.A.C.C.P. Although these are not the only exceptions contained in our State statutes,[2] Chapter 14 and especially Article 14.04 are the focus in this cause.

■ The cardinal rule of statutory construction is to ascertain the legislative intent in enacting a statute. See *Faulk v. State*, 608 S.W.2d 625 (Tex.Cr.App.1980), and cases cited therein. Such intent and a determination of the meaning of a statute is to be based upon the language of the statute itself. *Minton v. Frank*, 545 S.W. 2d 442 (Tex.1976). As in the case of an adult arrested pursuant to Chapter 14 of the code, we believe that the Legislature, in adopting Article 52.01 of the Family Code, as expressed its intent to allow a juvenile suspect to be taken into custody without a warrant if certain predicate procedures are

---

**2.** For example, the theft prevention and vehicle operation statutes allow warrantless seizures of some type. Article 18.16, V.A.C.C.P.; Article 6701d, Section 153, V.A.C.S.

met. Subsection (b) of that article clearly states that the taking into custody of a juvenile suspect is not to be considered as an "arrest" except for purposes of determining the *validity* of that "arrest." See V.T.C.A., Family Code, Section 52.01(b). The validity of the "arrest" is to be measured, in turn, according to the dictates of state law and the respective guarantees and protections found in the Fourth Amendment, Fourteenth Amendment and Article I, Section 9 of the Texas Constitution. See Article 52.01(b), supra; see also Steele, Delinquent Children and Children in Need of Supervision, 13 Tex.Tech.L.Rev. 1145, 1188 (1982). By setting out four permissible methods of taking a juvenile into custody, the Legislature has demonstrated its intent to allow custodial detention of a minor suspect in a more liberal manner under the Family Code than other individuals arrested pursuant to the procedures outlined in the Code of Criminal Procedure.

At first glance, it would appear that the "arrest" provisions in the two Codes are in conflict since both generally provide for the custodial detention of an individual under various circumstances of state law. However, even though dealing with the same general subject of arrest, we find that the persons involved and the objects of the two provisions at issue are distinct. Article 14.04, supra, along with the remainder of Chapter 14 of the Code of Criminal Procedure, provides for an action conducted pursuant to a criminal proceeding. Article 52.01, supra, is by its very nature a civil statute and lays outside the criminal system. The purpose of the Legislature in enacting the sections of the Family Code pertaining to juvenile offenders is set out in Section 51.01 of that Code:

"This title shall be construed to effectuate the following public purposes:

"(1) to provide for the care, the protection, and the wholesome moral, mental, and physical development of children coming within its provisions;

"(2) to protect the welfare of the community and to control the commission of unlawful acts by children;

"(3) consistent with the protection of the public interest, to remove from children committing unlawful acts the taint of criminality and the consequences of criminal behavior and to substitute a program of treatment, training, and rehabilitation;

"(4) to achieve the foregoing purposes in a family environment whenever possible, separating the child from his parents only when necessary for his welfare or in the interest of public safety and when a child is removed from his family, to give him the care that should be provided by parents; and

"(5) to provide a simply judicial procedure through which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced."

In line with these general guidelines, the juvenile court has exclusive jurisdiction over a juvenile until it properly certifies its action and waives jurisdiction in accord with the provisions of V.T.C.A., Family Code, Sections 51.04 and 54.02; *Ex parte Trahan*, 591 S.W.2d 837 (Tex.Cr. App.1979). Delinquency proceedings are civil in nature and the provisions of the Texas Code of Criminal Procedure do not apply unless the Legislature evinces a contrary intent. See *Robinson v. State*, 707 S.W.2d 47 (Tex.Cr.App.1986); *Ex parte Green*, 688 S.W.2d 555 (Tex.Cr.App.1985).

The Legislature, in adopting the provisions relating to the custodial detention of a juvenile, has demonstrated its awareness of the rule favoring warrants by including subsection (a)(2) in Article 52.01, supra, which allows a juvenile to be taken into custody "pursuant to the laws of arrest." This provision provides police necessary flexibility in making arrests where the age of the offender is not known. See Steele, Delinquent Children, supra. Subsection (a)(3), on the other hand, allows for a more liberal manner of taking a known juvenile into custody for further investigation without the formal stigmatizing procedures accompanying an adult arrest. At the same

time, the procedure allows the State to exercise limited control over a juvenile whose conduct has demonstrated a need for supervision and some as yet unknown level of punishment or rehabilitation.

■ Given the dissimilar individuals covered by the two provisions, the different objectives sought and the fact that the Legislature has mandated that the child is not "arrested" for purposes of criminal action until a juvenile transfer order is entered, Section 54.02, supra, we do not find the two statutes to be in irreconcilable conflict so as to require the type of construction used by the Court of Appeals below. See *Milles v. State,* 722 S.W.2d 411 (Tex. Cr.App.1986). To the contrary, we find that the Legislature has evinced its intent to distinguish the "arrest" of juveniles from that of adult offenders as shown by the pertinent juvenile provision. Cf. *Continental Casualty Company v. Miller,* 135 S.W.2d 501 (Tex.App.—Waco, 1940).

■ Even if the two provisions at issue were to be in conflict, the Code Construction Act applies generally to both the Family Code and the Code of Criminal Procedure. *Lovell v. State,* 525 S.W.2d 511 (Tex. Cr.App.1975). Pursuant to that act, we would agree that Article 52.01, because it more specifically addresses the custodial detention of *juvenile* offenders, is the more specific enactment and controls over Article 14.04 of the Criminal Code. See *Lovell v. State,* supra. We, therefore, hold that Article 14.04, supra, does not apply to the warrantless "arrest" of a juvenile offender. Appellant, being detained pursuant to Article 51.02 of the Family Code, was not entitled by statute to the same protections his adult counterpart would expect as a detainee in a criminal prosecution. Indeed, after initial detainment for further investigation, appellant was entitled to and received greater protections than he would had he been arrested as an adult. Review of the record before us shows that appellant was treated in a manner entirely consistent with the procedures set out in the Family Code and was not denied his rights as a juvenile nor denied due process of the law.[3]

■ We further find that appellant was not denied equal protection of the law by manner of his detention under Section 52.01, supra. Article I, Section 3 of the Texas Constitution and the Fourteenth Amendment to the Federal Constitution secure to all persons similarly situated equal protection under the laws of this State and the United States. In the absence of a suspect classification, a state law is not repugnant to either constitutional provision so long as unequal treatment of persons is based upon a reasonable and substantial classification of persons. Unequal treatment of persons under a state law which is founded upon unreasonable and unsubstantial classification constitutes discriminating state action and violates both the state and federal constitutions. See *Milligan v. State,* 554 S.W.2d 192 (Tex.Cr.App.1977); *Ex parte Matthews,* 488 S.W.2d 434 (Tex. Cr.App.1973); *Rucker v. State,* 170 Tex.Cr. R. 487, 342 S.W.2d 325 (1961).

Juveniles and adult criminal defendants are not "similarly situated" until the former is certified as an adult and comes within the purview of the adult criminal system. But, even assuming a similar stance at point of trial, there is no difficulty in perceiving a rational basis for application of Article 52.01, supra, to juveniles ultimately tried as adults. The provisions of the Family Code pertaining to delinquency are civil in nature and were enacted both to allow juveniles to avoid the stigmatizing effect of arrest and to ensure that any child who is without proper supervision may be placed back into a supervised environment for the protection of the child and of the rest of society. See Section 51.01, supra. The detention itself must meet constitutional and statutory muster to be valid.

**3.** The record reflects that further investigation and detention were properly performed according to the mandate of the Family Code. Moreover, except for appellant's claims of improper notice of his transfer hearing, a claim properly resolved against him by the appeals court below, there is no question that he was accorded due process of law in his detention and transfer proceedings, as well as the required proceedings after transfer to the criminal system leading up to trial on the merits.

Until the moment transfer is ordered, the juvenile is cloaked with the trappings of a non-criminal proceeding with attendant safeguards such as greater protections in the areas of confession law and notice requirements. See V.T.C.A., Family Code, Sections 52.02, 52.03, 53.01 et seq. After transfer to the criminal system, the juvenile still retains any more protective safeguards afforded him as a juvenile. See *Lovell v. State*, supra, as well as other safeguards afforded him under the Code of Criminal Procedure.

In enacting Article 52.01(a)(3), supra, the Legislature has pursued a rational course in allowing further investigation of an incident involving a juvenile by requiring that the police may only take a juvenile into custody if the "arrest" meets statutory and constitutional muster. Article 52.01(a)(3), supra, as a separate and distinct method of "arresting" a juvenile as compared to an adult suspect, provides a vehicle to be used in lieu of formal arrest procedures contemplated under the criminal code. The statutory requirement having been met, we must now turn our attention to the question whether the warrantless arrest, *vis a vis* Article 52.01(a)(3), supra, passes the constitutional test of validity.

■■■■ The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Burger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *Brown v. State*, 657 S.W.2d 797 (Tex.Cr.App.1983); *Kolb v. State*, 532 S.W.2d 87 (Tex.Cr.App.1976). A minor has the same constitutional right to be secure in his person as an adult. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); see also *Lanes v. State*, 711 S.W.2d 403 (Tex.App.—Beaumont 1986), and cases cited therein.

■■■■ In the context of an arrest, an officer acting with probable cause to arrest may do so without a warrant and not violate the Fourth Amendment. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), but see *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The test for determining probable cause for a warrantless arrest is whether, at the moment of arrest, the knowledge of the arresting officer that is based upon reasonably trustworthy information would warrant a reasonable and prudent person in believing that a particular person has committed or is committing a crime. *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983). In reviewing the sufficiency of probable cause, the Court will look to the facts and circumstances of each particular case. *Woodward v. State*, 668 S.W.2d 337 (Tex.Cr.App.1982) (opinion on rehearing); *Lewis v. State*, 598 S.W.2d 280 (Tex.Cr.App.1980). The standards applicable to reviewing the factual basis underlying an officer's probable cause assessment are as stringent as the standards applied to a magistrate's assessment of probable cause before issuing a warrant. *Wilson v. State*, 621 S.W.2d 799 (Tex.Cr.App.1981). Mere suspicion is not enough to justify a warrantless arrest. *Gill v. State*, 134 Tex. Cr.R. 363, 115 S.W.2d 923 (Tex.Cr.App. 1938).

From a purely constitutional standpoint, this Court has recently noted that the basic interests and guarantees of Article I, Section 9 of the Texas Constitution are, in all material aspects, the same. *Brown v. State*, supra. In *Brown*, we declined the defendant's "invitation to attach to Article I, Section 9 a more restrictive standard of protection than that provided by the Fourth Amendment." Given the safeguards provided by the probable cause standard, there is no reason to expand upon Fourth Amendment limitations in the area of arrests for purposes of our own State Constitution.

In the instant case, the following facts were collectively known to officers when appellant was taken into custody:

1. Palmer and Dabney were attacked and their purses stolen while in the parking lot of a certain restaurant.

2. An eyewitness description of the assailant was given by Dabney.

3. The physical description of the assailant matched that of appellant, a former restaurant employee.

4. Appellant was seen at the restaurant on the evening in question and shortly before the incident wearing clothing similar to that worn by the assailant.

5. Palmer suffered stab wounds in the incident.

6. The officers were told by a neighbor that appellant lived or spent time at a certain residence nearby and would shortly return to that residence in a particular type vehicle. The information proved correct.

7. Upon appellant's return, he admitted his identity to officers.

8. When seen by the officers for the first time, appellant matched the physical description given by Dabney the night before, was wearing similar clothing and was carrying a large hunting knife on his belt.

9. When officers separated appellant from his acquaintances and placed him into the rear of the police car, he attempted to throw away a gold cigarette lighter with Palmer's initials engraved upon it.[4]

10. After the officer retrieved the lighter, appellant spontaneously admitted culpability of his actions.

▌ In sum, an eyewitness-victim gave officers a physical description which matched that of appellant, according to several impartial employees of the restaurant. A possible address at which to locate appellant was verified the next day by another individual whose further information as to appellant's return was verified by appellant's appearance and admission of identity. Finally, while temporarily detaining appellant, tangible evidence of the crime was discovered when appellant abandoned it. See *Gonzalez v. State*, 461 S.W.2d 408 (Tex.Cr.App.1971).

In light of the preceding considerations, we hold that the facts and circumstances within the collective knowledge of the officers involved and of which they had reasonable trustworthy information were sufficient to warrant a person of reasonable caution in the belief that appellant had committed the offense against Palmer and Dabney. See *Wilson v. State*, supra.

The Legislature having indicated its preference to allow warrantless detainment of juveniles, and the statute by express language requiring a constitutional basis of probable cause to be met before a juvenile may be taken into custody, we hold that the police officers here had reasonable grounds or probable cause to take appellant into custody.

▌ The arrest being valid, the cigarette lighter and confession were fruits of a valid arrest and were properly admitted at trial.[5]

The judgment of the Court of Appeals is affirmed.

ONION, P.J., and CAMPBELL and DUNCAN, JJ., concur in the result.

MILLER, J., joins all but that part of the majority opinion dealing with the relationship of Art. I, § 9 of the Texas Constitution and the 4th Amendment of the U.S. Constitution. See his dissent in *Osban v. State*, 726 S.W.2d 107 (Tex.Cr.App.1987).

4. We are not asked to determine at specifically what point appellant was "arrested." The record reflects that appellant was placed, without handcuffs or supervision, into the car while the officers waited for backup assistance to quiet a potentially explosive situation. For purposes of this opinion, we consider probable cause to have "ripened" with appellant's admission of his identity. His action in attempting to rid himself of tangible evidence of the crime took place simultaneously with the initial, perhaps temporary detention.

5. Even if the arrest were to be held invalid, the cigarette lighter was abandoned by appellant and was, therefore, admissible under *Gonzales v. State*, 461 S.W.2d 408 (Tex.Cr.App.1971). Likewise, any taint of an illegal warrantless arrest would be attenuated by the stricter safeguards governing juvenile confession law and the fact that appellant here actively chose to "spill the beans" without prompting or coercion when first detained.

CLINTON, Judge, dissenting.

In the Houston (1st) Court of Appeals appellant presented two points of error arising out of what he contended is an illegal warrantless arrest in that it is not authorized by Article 14.04, V.A.C.C.P. *Vasquez v. State*, 663 S.W.2d 16, at 18 and 22 (Tex.App.—Houston [1st] 1983).

The Houston Court believed his contention "presumes that when a minor is taken into custody without a warrant that Article 14.04[, supra.] is applicable to the detention rather than Section 52.01 of the [Family Code]." *Id.*, at 22. For its part, the majority here flatly holds that Article 14.04 "does not apply to the warrantless 'arrest' of a juvenile offender." Slip Opinion, at 10. Neither is correct, in my judgment.

In the trial court, having been certified as an adult and transferred to a district court for trial, appellant objected as an adult to admission in evidence of fruits of an illegal arrest in a criminal action on an indictment for capital murder. V.T.C.A. Family Code, § 54.02(h) provides that after being transferred the child "shall be dealt with as an adult and in accordance with the Code of Criminal Procedure, 1965," and that such "transfer of custody is an arrest." Neither the Houston Court nor the majority opinion here ever satisfactorily explains how it is that a certified child and an adult are not similarly situated upon being indicted for a penal offense. In Steele, *Delinquent Children and Children in Need of Supervision*, 13 Tex.Tech.L.Rev. 1145 (1982), also cited in the majority opinion, legislative intent is plainly stated, *viz:*

> " 'Pursuant to the laws of arrest' in subsection (a)(2) means that a child may be taken into custody *under the same circumstances that a law enforcement officer is authorized to arrest an adult.* .... Subsection (a)(3) is intended to authorize taking a child into custody for noncriminal CINS if these same bases are met.
>
> \* \* \* \* \* \*
>
> Subsection (b) is ... designed to shelter the child from the stigmatizing effects of an arrest, *while providing him with the legal protections that sur-round the arrest of adults.* These include the right to exclude evidence seized pursuant to an unlawful arrest. ..."

*Id.*, at 1188–1189. (All emphasis is mine throughout unless otherwise noted.)

Although § 54.02(a)(3) provides that a juvenile court may waive its exclusive original jurisdiction and transfer a child to district court for criminal proceedings if "after full investigation and hearing" it determines existence of a prescribed reason "requires criminal proceedings," the courts have held that a transfer hearing is "like a grand jury proceeding and, therefore, is not the proper forum to litigate [such issues as] legal admissibility of a confession" or hearsay evidence "because it is not the function of a transfer proceeding to determine guilt." *Steele*, op cit, at 1218–1219.

Thus a child may not complain of an illegal arrest until he stands accused as an adult in district court. When he does then and there, the majority says his complaint will be decided under its own construction of his former status as a juvenile rather than his certified status as a adult.

Without its construction there would be no equal protection question raised. Since he has become similarly situated with any adult offender, it seems to me there is *great* "difficulty in perceiving a rational basis" for denying a certified adult equal rights of an adult under the law. The purported rationalization offered by the majority at 43 is woefully lacking in demonstrating there is one to justify stripping a certified adult of the protection afforded by Article 14.04 from a warrantless arrest that is vouchsafed to every adult citizen.

I dissent.

TEAGUE, J., joins this opinion.