

NUMBER 13-10-00493-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**FRANCISCO EMMANUEL DOMINGUEZ,**                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

**On appeal from the 357th District Court
of Cameron County, Texas.**

# DISSENTING MEMORANDUM OPINION
### Before Justices Rodriguez, Benavides, and Perkes
### Dissenting Memorandum Opinion by Justice Benavides

A review of the record reveals the following timeline:

- On June 16, 2008, Dominguez was arrested under the juvenile justice code.

- That same day, as per Lieutenant Castañeda's testimony, attorney "Trey Garza" arrived at the Harlingen Police Department, declared himself attorney for Dominguez, and stated that no one was to talk to Dominguez.

- According to testimony, on June 16, 2008 Officers took Dominguez before Magistrate Sallie Gonzalez in an attempt to interrogate him, but Dominguez refused to speak with them. *See* TEX. FAM. CODE ANN. § 51.095 (West 2008).

- A hearing was held to determine whether Dominguez should be transferred to the criminal court system.[1]  *See id.* § 54.02 (West 2008).  Dominguez testified in the motion to suppress hearing that he was declared an adult at this proceeding and was represented by a juvenile court-appointed attorney.

- On August 11, 2008, Dominguez was transferred to the adult Carrizales-Rucker Detention Center.

- Lieutenant Castañeda received a call from an unidentified source advising him that Dominguez was certified as an adult and was being transferred to the Carrizales-Rucker facility.

- Lieutenant Castañeda and Officers Rolph and Escalon removed Dominguez from his cell after 10 p.m.

- Lieutenant Castañeda did not ask Dominguez if he was represented by an attorney because he was notified by an unnamed source that Dominguez was not represented.  Lieutenant Castañeda proceeded to read Dominguez his *Miranda* rights and interrogate Dominguez along with the other officers.

- Lieutenant Castañeda testified at the suppression hearing that Dominguez told them that he wanted to talk to them before, but his attorney would not allow it.  However, Dominguez testified that he told law enforcement officers that he did not want to be questioned, but they persisted.

---

[1] I am unable to the exact date of this hearing from the record.  At the suppression hearing, defense counsel argued to the trial court that the transfer hearing was held on August 8, 2008, the State elicited testimony from Officer Rolph confirming that Dominguez had "waived his hearing on a discretionary transfer to become certified as an adult," and Dominguez testified that his adult certification hearing was "on the 12th."

- According to Dominguez's testimony, he signed his self-incriminating statement approximately two to three hours after law enforcement officers arrived at the adult facility at 12:45 a.m.

- On August 27, 2008, the juvenile court signed an order waiving jurisdiction and transferring the cause to the criminal district court. *See id.*

Based on these facts, I would hold that the trial court committed harmful error in denying Dominguez's motion to suppress the August 12, 2008 statement because the officers obtained Dominguez's statement improperly under the juvenile justice code.

## I. JURISDICTION AND WAIVER

As a matter of procedure, this Court is not precluded from addressing an issue not briefed or raised by Dominguez. When a defendant appeals his conviction, courts of appeals have the jurisdiction to address any error in that case. *Pfeiffer v. State*, 363 S.W.3d 594, 599 (Tex. Crim. App. 2012). The jurisdiction of this Court is invoked by the timely filing of a notice of appeal. *Id.* Once our jurisdiction is invoked, our function to review is limited only by our own discretion or valid restrictive statute. *See Carter v. State*, 656 S.W.2d 468, 469 (Tex. Crim. App. 1983) (en banc) (holding that "[a]fter jurisdiction attaches to a particular cause, a broad scope of review and revision has been asserted by appellate courts of this State—one that is still recognized, acknowledged and confirmed by the Legislature"). Furthermore, "'[t]here is a fundamental proposition pertaining to appellate functions of the [j]udicial [d]epartment: A constitutional grant of appellate jurisdiction treats a right of appeal in criminal cases 'as a remedy to revise the whole case upon the law and facts, as exhibited in the record [.]'" *Pfeiffer*, 363 S.W.3d at 599 (quoting *Carter*, 656 S.W.2d at 468). Therefore, when a defendant appeals his conviction, courts of appeals have the jurisdiction to address any error, *see Pfeiffer*, 363

S.W.3d at 599; even those which "prompt *sua sponte* appellate attention" because the error involved constitutes a violation of established rules. *Pena v. State*, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006). I would hold that the error in this case is one that our Court's discretion cannot ignore and one that we must address *sua sponte*, in light of the age of the defendant at the time, the facts of the case, the magnitude of the offense, and the potential harm that ignoring it may cause.[2]

## II. ANALYSIS

Juveniles and adult criminal defendants are not treated equal in Texas "until the former is certified as an adult and comes within the purview of the adult criminal system." *Vasquez v. State*, 739 S.W.2d 37, 43 (Tex. Crim. App. 1987) (en banc). For purposes of the juvenile code, a "child" is a person who is older than ten, but younger than 17 years of age. TEX. FAM. CODE ANN. § 51.02(2) (West 2008). "Until the moment transfer is ordered, the juvenile is cloaked with the trappings of a non-criminal proceeding with attendant safeguards such as greater protections in the areas of confession law and notice requirements." *Vasquez*, 739 S.W.2d at 43.[3]

Some of the governing statutory safeguards include the rules regarding waiver of rights and admissibility of a child's statement. *See* TEX. FAM. CODE ANN. §§ 51.09–.095

---

[2] The waiver cases cited by the majority from our sister courts in Houston and Dallas deal with unrelated issues and are thus unpersuasive. The *Ponce* case involved a child committing the crime of perjury, which does not preclude prosecution; and in *Geter*, the appellant challenged the manner and means of waiving his rights before a magistrate under section 51.09 of the family code. *See Ponce v. State*, 985 S.W.2d 594, 595 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Geter v. State*, No. 05-95-00775-CR, 1996 WL 459767, at *3 (Tex. App.—Dallas July 31, 1996, no pet.) (not designated for publication). Neither of these cases applies here.

[3] The *Vasquez* decision by Judge McCormick is an interpretation of the juvenile justice code as well as rigorous analysis of pertinent case law and constitutional principles. References to *Vasquez* are hardly "dicta" as the majority contends.

4

(West 2008). For example, a child may not waive any federal or state constitutional rights without the consent of the child and his attorney, unless he received proper warnings from a magistrate without the presence of law enforcement. *Compare id.* §§ 51.09–.095 *with* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2003).

Here, Dominguez's transfer order was not signed until August 27, 2008—two weeks after law enforcement obtained his written confession at the Carrizales-Rucker facility. Because a juvenile court holds exclusive original jurisdiction over these matters, I would hold that a written transfer order under section 54.02 is jurisdictionally mandatory because it effectively waives the juvenile court's jurisdiction and transfers it from a juvenile proceeding to an adult proceeding. *But see Evans v. State*, 61 S.W.3d 688, 690 (Tex. App.—Fort Worth 2001, no pet.) (holding that a lack of written transfer order between two adult criminal district courts was a procedural matter rather than a jurisdictional one).

The record is unclear as to when Dominguez was certified as an adult. The majority assumes from testimony that Dominguez was certified prior to his self-incriminating statement. Without more details, I cannot join this assumption because dates are too critical to this issue. After his physical transfer to the Carrizales-Rucker facility on August 11, 2008, law enforcement visited Dominguez later that night into the early morning of the next day. The majority assumes, based on testimony, that a proper transfer order was in place on August 11, 2008, when Dominguez was moved to the adult facility. However, without being afforded the underlying juvenile record in this case, we must conclude that Dominguez's final transfer

under section 54.02 was effective on August 27, 2008, not August 11, 2008.[4]  The mere physical transfer of Dominguez from a juvenile facility to an adult facility, without a signed, corresponding written transfer order, is inadequate for me to conclude that the juvenile cloak had been lifted in this case at the time he made his statement.[5]  *Vasquez*, 739 S.W.2d at 43.  I am baffled by the majority's position that Dominguez's physical transfer to an adult-detention facility without the proper, signed transfer order was enough to remove his "juvenile cloak," particularly when it appears from the record that the officers who conducted Dominguez's interrogation were acting on information told to them from unknown or undisclosed sources.  This assertion is unreasonable because it effectively skirts and defies the Legislature's intent to hold juvenile defendants under a more protected justice system separate and apart from adult criminals.[6]  Therefore, I would hold, based on the record, that until August 27, 2008, Dominguez was (1) a child,

---

[4] It is worth noting that the transfer order included in Dominguez's record is defective.  The transfer order fails to comply with the statutory requisites of section 54.02.  The pertinent statutes states that if a juvenile court waives jurisdiction:

> it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court, and shall transfer the person to the appropriate court for criminal proceedings and cause the results of the diagnostic study of the person ordered under Subsection (d), including psychological information, to be transferred to the appropriate criminal prosecutor.

*See* TEX. FAM. CODE ANN. § 54.02 (h).

[5] I would hold that cases like *Rushing v. State*, 50 S.W.3d 715 (Tex. App.—Waco 2001), *aff'd* 85 S.W.3d 283 (Tex. Crim. App. 2002), are inapplicable to the instant case because they deal with late filings of transfer orders and not the effective dates of the orders.  Here, a transfer order was not effective until August 27, 2008.  The filing date of the order is irrelevant in this case.

[6] The majority's interpretation of section 54.02 would be nonsensical and would create inconsistencies in the law.  *See Molinet v. Kimbrell*, 356 S.W.3d 407, 414–15 (Tex. 2011) (holding that "it is the Legislature's prerogative to enact statutes; it is the judiciary's responsibility to interpret those statutes according to the language the Legislature used, absent a context indicating a different meaning or the result of the plain meaning of the language yielding absurd or nonsensical results").

6

*see* TEX. FAM. CODE ANN. § 51.02(2)[7]; (2) represented by counsel, s*ee id.* § 51.10(b)(1); and (3) should have been afforded the procedural safeguards for juvenile defendants, *see* TEX. FAM. CODE ANN. §§ 51.09–095. Dominguez should not have been allowed to waive his Fifth Amendment right and sign his statement without his attorney or a magistrate present under the juvenile code. *See id.*

The juvenile justice code was enacted by our legislature to meet several public policy goals and "pervasive themes," such as (1) to provide for the protection of the public and public safety; and (2) to provide for the care, the protection, and the wholesome moral, mental, and physical development of children coming within its provisions. *Id.* § 51.01 (West 2008); *Lanes v. State*, 767 S.W.2d 789, 795 (Tex. Crim. App. 1989) (en banc); *see In re D.Z.*, 869 S.W.2d 561, 566–67 (Tex. App.—Corpus Christi 1993, writ denied). In order to further these intended goals and themes, law enforcement must comply with these statutes when dealing with juvenile defendants. That did not happen here. *See generally id.*

Accordingly, I conclude that law enforcement authorities in this case improperly obtained Dominguez's confession in the early morning hours of August 12, 2008, and in light of this impropriety, I would hold that the trial court committed error by denying Dominguez's pre-trial motion to suppress. *See Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). This error allowed the jury to place weight on Dominguez's improperly-obtained statement, and if I were to hold it harmless, it will encourage the

---

[7] Dominguez's age by itself does not automatically remove him from the enhanced protections of the juvenile justice code. *See Vasquez*, 739 S.W.2d at 43 (noting that a child is not "arrested" for purposes of criminal action until a juvenile transfer order is entered).

State to repeat this impropriety with impunity.  *See* TEX. R. APP. P. 44.2(a); *Wilson v. State*, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996) (en banc).  Because I cannot determine beyond a reasonable doubt that this erroneous admission of evidence did not contribute to Dominguez's conviction or punishment, I would reverse the conviction and remand for a new trial.  *See* TEX. R. APP. P. 44.2(a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).

For the foregoing reasons, I respectfully dissent.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of July, 2012.

8