

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-75,835-02

### IN RE HECTOR ROLANDO MEDINA, Relator

### ON APPLICATION FOR WRIT OF PROHIBITION IN CAUSE NO. W07-32923-S(A) IN THE 282ND JUDICIAL DISTRICT COURT DALLAS COUNTY

**ALCALA, J., filed a dissenting opinion.**

### DISSENTING OPINION

The Fifth Amendment to the United States Constitution that refers to "any criminal case" precludes the habeas court from compelling Hector Rolando Medina, relator, to testify at the hearing on his application for a post-conviction writ of habeas corpus. *See* U.S. CONST. amends. V, XIV; TEX. CODE CRIM. PROC. art. 11.071. Despite this federal constitutional guarantee, this Court's judgment refuses to grant relator's motion for a writ of prohibition that would disallow the habeas judge from compelling relator's testimony. I, therefore, respectfully dissent.

### I. Analysis

I disagree with this Court's majority opinion because (A) the Legislature has determined that habeas proceedings in the context of a death-penalty case are treated as part of a defendant's "criminal case," which makes the Fifth Amendment applicable to relator in this particular situation; (B) even assuming that relator's habeas action is not a continuing part of his "criminal case," the Supreme Court has expanded Fifth Amendment protections to apply to situations outside the context of a criminal case in which a statement "is or may be inculpatory,"[1] and this would necessarily include an applicant's habeas testimony as it pertains to the reasonableness of counsel's trial strategy in defending against the criminal accusations against him; and (C) the law is not unsettled, nor does relator have an adequate remedy by appeal.

**(A) Death-Penalty Habeas Proceedings Are Part of a Defendant's "Criminal Case"**

This application for a writ of prohibition must be narrowly construed to the facts of this case, which involves a death sentence for capital murder, rather than a broader application that includes non-death cases. As the Supreme Court has observed, "death is different[.]" *See Gregg v. Georgia*, 428 U.S. 153, 188, 96 S. Ct. 2909 (1976).

Because of the way the Texas Legislature statutorily treats death-penalty cases, these habeas proceedings are a continuing part of a death-sentenced individual's criminal case. The Texas Legislature has enacted statutory provisions governing habeas proceedings in death-penalty cases that are unlike those for non-death-penalty cases. *See* TEX. CODE CRIM.

---

[1] *In re Gault*, 387 U.S. 1, 49, 87 S. Ct. 1428 (1967).

PROC. art. 11.071. For example, Code of Criminal Procedure Article 11.071 states, "An applicant shall be represented by competent counsel unless the applicant has elected to proceed pro se and the convicting trial court finds, after a hearing on the record, that the applicant's election is intelligent and voluntary." *Id*. § 2(a). Additionally, the Code states, "On appointment, counsel shall investigate expeditiously, before and after the appellate record is filed in the court of criminal appeals, the factual and legal grounds for the filing of an application for a writ of habeas corpus." *Id*. § 3(a). Furthermore, the Legislature has made this writ "returnable to the court of criminal appeals," a court with exclusive jurisdiction over criminal cases, rather than to the Texas Supreme Court, a court with exclusive jurisdiction over civil cases. *Id*. § 4(a). Federal courts treat these cases similarly. *See* 18 U.S.C.A. § 3599(a)(2) (in federal post-conviction proceeding, indigent defendants sentenced to death entitled to appointment of one or more attorneys and furnishing of other services as needed). Unlike the broader category of cases that would include non-death-penalty writs, therefore, post-conviction litigation for death sentences triggers particular statutory rights in state and federal courts. The consequence of these statutory rights is that death-penalty habeas proceedings are a continuing part of a death-sentenced individual's criminal case.

I am unpersuaded that non-death-penalty statutes and case law interpreting those statutes have any application here. The outlier decisions by federal district courts or courts from other states that have treated habeas applications in non-death cases like civil cases by

permitting a court to compel a convicted person to testify have no application to death-penalty habeas cases under these circumstances in which the Texas Legislature has decided to treat these cases as part of a defendant's continuing criminal case. This is precisely what the New Mexico Supreme Court held in a procedurally similar situation in *Allen v. LeMaster*, 267 P.3d 806, 810 (N.M. 2011). Looking to its own state law in *Allen*, the New Mexico Supreme Court held that, in the context of a state post-conviction habeas proceeding challenging a death sentence, the privilege against self-incrimination applied and would prohibit a convicted person's compelled testimony in that context. *Id*. The Court stated, "The placement of habeas corpus regulation within our Rules of Criminal Procedure demonstrated this Court's recognition that postconviction motions challenging a conviction or sentence in a criminal case are in reality part of a criminal proceeding." *Id*. "[S]uch proceedings are a further step in a movant's criminal case and not a separate civil action." *Id*. "[P]ost-conviction habeas petitions are not appropriately characterized as civil actions." *Id*. "Habeas corpus proceedings . . . are in every real sense a continuation of a defendant's criminal case." *Id*. "The role of a . . . habeas petition as part of a criminal proceeding is exemplified in a case like this, in which a defendant alleges ineffective assistance of counsel, because a petition for a writ of habeas corpus often presents the criminal defendant's first opportunity to raise this claim." *Id*. "We simply note the undeniable reality that a defendant's compelled testimony in a habeas action could result in imprisonment or death if the compelled statements bring about a denial in his habeas action, on the one hand, or

contribute to evidence used to incriminate him in his retrial or resentencing if he prevails in the habeas, on the other." *Id*. at 812. The reasoning of the New Mexico Supreme Court is persuasive in showing that, in determining whether the constitutional protection against self-incrimination applies in this context, we should look to the Texas Legislature's intent to treat habeas corpus as a continuing part of a death-sentenced individual's criminal case. *See id*.

Not only has the Texas Legislature plainly treated a death-penalty habeas proceeding as a continuing part of a defendant's criminal case, but this Court has already implicitly made that determination in this specific case by exercising our jurisdiction over relator's earlier writ. *See Ex parte Medina*, 361 S.W.3d 633, 643 (Tex. Crim. App. 2011) (exercising our jurisdiction over relator's initial writ application by holding that his initial habeas counsel had failed to file a cognizable writ application). Having already exercised our jurisdiction to determine that this particular relator's post-conviction writ application falls within our jurisdiction over criminal cases, we cannot now decide to deprive him of federal constitutional guarantees by deciding that this is not a criminal case.[2]

---

[2]*Cannon v. State* provides no support for the State's argument that relator's Fifth Amendment rights are inapplicable here. *See* 252 S.W.3d 342 (Tex. Crim. App. 2008). In *Cannon*, this Court held that "defense counsel's behavior, considered as a whole, constructively denied [Cannon] his Sixth Amendment right to the effective assistance of counsel." *Id.* at 350. This Court explained that "counsel, throughout [Cannon's] trial, repeatedly stated the reason for his behavior: he was simply unprepared to go forward." *Id.* This Court further observed that "the record contains no suggestion that [Cannon] failed to cooperate with defense counsel, or that [Cannon] directed, agreed with, or acquiesced in defense counsel's behavior." *Id.* In explaining why its ruling would not encourage other defense counsel to behave in this manner, this Court noted that the disciplinary rules of professional conduct or a civil suit for malpractice would guide attorneys to behave responsibly, and it further observed that "a trial court can meet the threat of attorney non-participation by ascertaining whether the defendant understands the implications and probable consequences of his counsel's

I note here that, regardless of whether non-death-penalty cases are considered final after exhaustion of a direct appeal, death-penalty cases are different. Rarely will a non-death-penalty defendant receive relief from his conviction through habeas litigation. In contrast, no one disputes that the vast majority of defendants who have received relief from their death sentences have received it through state or federal habeas proceedings and not through direct appeal. And defendants may obtain relief from their death sentences even decades after their direct appeal was considered "final." Few who have actual knowledge of death-penalty litigation would disagree with the proposition that a death-penalty case is not truly final until a defendant is executed.

In reliance on *Mitchell v. United States*, it is suggested that incrimination is complete once sentence is imposed and the conviction becomes final, but that is far too narrow a reading of that case, in which the Supreme Court was not called upon to address the outer parameters for application of the Fifth Amendment. *See Mitchell v. United States*, 526 U.S. 314, 330, 119 S. Ct. 1307 (1999). In *Mitchell*, the Supreme Court held that the federal

conduct and whether the defendant is knowingly, intelligently, and voluntarily waiving his right to the effective assistance of counsel." *Id.* at 352. This particular statement by the Court was made in the context of explaining how a trial judge could potentially respond to a situation in which defense counsel refuses to participate in the trial proceedings and it becomes apparent during the course of a trial that the defendant is not receiving effective assistance of counsel. *See id.* But nothing about this Court's statement suggests that a defendant gives up his Fifth Amendment right to remain silent and not testify at his trial merely because his attorney decides to behave badly. Rather, as trial judges often do, they may communicate to a defendant through counsel in order to inquire as to whether counsel has advised the defendant about the strategy that is being employed and whether a defendant is waiving certain rights. Nothing about the fact that a trial judge may make inquiries of the defendant through counsel suggests that a defendant forgoes his Fifth Amendment privilege by pleading ineffective assistance of counsel.

constitutional Fifth Amendment right against self-incrimination applies both to the guilt and sentencing stages of trial and is not waived by a guilty plea. *Id*. at 324-26. In reaching that holding the Court explained, "Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony." *Id*. at 326. The Court continued,

> It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude that principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final. If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared.

*Id*. Applying these concepts in the context of a guilty plea and a subsequent plea colloquy, the Court observed that a defendant's Fifth Amendment privilege would extend to that situation because to hold otherwise would be to permit the government to "enlist the defendant as an instrument in his or her own condemnation[.]" *Id*. at 325.

Because it was deciding whether the Fifth Amendment right against self-incrimination would apply to the sentencing phase of a trial following a plea of guilty, the Court was not called upon to decide whether that right would also apply to habeas proceedings or, more particularly, whether it would apply to habeas proceedings, such as the ones at issue here, that are statutorily provided for in all death-penalty cases. Although the particular holding in *Mitchell* does not address the question before us here, three statements in dicta in that case support my view that relator's Fifth Amendment privilege remains intact at this stage of the proceedings.

First, the Supreme Court stated, "To maintain that sentencing proceedings are not part of 'any criminal case' is contrary to the law and to common sense." *Id*. at 327. As noted above, the law in Texas is that a habeas proceeding in a death-penalty case is considered part of a criminal case in that it is decided by this Court and its procedures are controlled by the Code of Criminal Procedure. Moreover, as the Supreme Court has observed, the first real opportunity that a defendant has to challenge the effectiveness of his trial counsel in Texas is through habeas litigation. *See Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (observing that Texas procedure makes it "virtually impossible" to adequately present ineffective-assistance claim on direct appeal). It strains common sense to suggest that a conviction and death sentence must be considered final because a direct appeal has concluded when a matter central to the review of the case, ineffective assistance of trial counsel, likely could not be resolved until the culmination of the initial application for a writ of habeas corpus. *See id*.

Second, in *Mitchell*, the Supreme Court said, "Another reason for treating civil and criminal cases differently [for purposes of applying the privilege in criminal cases and not in civil cases] is that 'the stakes are higher' in criminal cases, where liberty or even life may be at stake, and where the government's 'sole interest is to convict.'" *Mitchell*, 526 U.S. at 328. There are no higher stakes than those at issue here, where relator is challenging the effectiveness of his trial counsel who abandoned him at the punishment phase of his trial and where he has been sentenced to death for this crime. *Id*. Treating a death-sentenced individual as if his interests were merely civil in nature contravenes the essence of the

Supreme Court's reasoning in *Mitchell*. *See id*.

Third, the Supreme Court's focus on whether a defendant might face any "adverse consequences . . . by reason of further testimony" and whether there was any "further incrimination to be feared" supports the view that the federal constitutional Fifth Amendment privilege applies to relator's habeas hearing. *Id*. at 326. Here, after offering relator use immunity, the State suggests that he will not face any adverse consequences from his testimony. But this is too limited a view of relator's likely testimony that would necessarily discuss his role in the offense and counsel's statements to him regarding the trial strategy in defending against the accusations at guilt and at punishment. And if relator is granted a new trial, the State will have the benefit of relator's testimony as it pertains to the accusations against him and any mitigating evidence, which it otherwise would not have. A defendant should not be compelled to give up his right against self-incrimination merely to ensure that his other constitutional rights are not violated. Because he is entitled to the effective assistance of counsel at trial, a defendant must be permitted to ensure that his constitutional rights are fulfilled without having to waive his Fifth Amendment privilege in order to do so. The Supreme Court has specifically observed that defendants are not required to choose amongst the constitutional rights to which they are entitled. *See Simmons v. United States*, 390 U.S. 377, 394 (1968) ("[W]e find it intolerable that one constitutional right should have to be surrendered in order to assert another.").

The instant habeas case is an application for relief from a death sentence for which

relator will be executed if habeas relief is not granted. The issue at stake in relator's habeas proceeding, the effectiveness of his trial counsel, goes to the very heart of whether he received a fair trial. *See Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S. Ct. 838 (1993) ("'[T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.'") (quoting *United States v. Cronic*, 466 U.S. 648, 654, 104 S. Ct. 2039 (1984)). This death-penalty case cannot be transformed into a civil case merely because the proceeding is a habeas hearing that occurs post-conviction, particularly when the disputed issue in the habeas application is an ineffective-assistance claim that typically is raised for the first time on post-conviction review. Although it is true that a civil burden of proof and civil procedural rules may apply to certain aspects of a habeas hearing, the underlying substance of the case remains criminal in nature. Because the federal Constitution provides that a defendant shall not be "compelled in any criminal case to be a witness against himself," and because this post-conviction proceeding is a criminal case in the sense that its sole purpose is to determine the validity of relator's conviction and death sentence for capital murder, relator may not be compelled to testify at his habeas hearing, which the Legislature and this Court have treated as a continuing part of a defendant's criminal case.

**(B) Applicant's Habeas Testimony About Counsel's Trial Strategy "Is or May Be Inculpatory"**

Even assuming for the sake of argument that a post-conviction habeas proceeding in a capital case is civil rather than criminal in nature, that distinction is not dispositive as to

whether the Fifth Amendment privilege against self-incrimination applies in this context. Under Supreme Court and Texas Supreme Court precedent, the fact that a civil standard of review, civil procedural rules, or a civil appeal applies to a case is immaterial to the question of whether federal constitutional Fifth Amendment rights apply to the case. *See Ex parte Valle*, 104 S.W.3d 888, 889 (Tex. Crim. App. 2003) (juvenile adjudication for delinquent conduct for committing capital murder is subject to civil appeal); *Vasquez v. State*, 739 S.W.2d 37, 42 (Tex. Crim. App. 1987) (plurality op.) ("Delinquency proceedings are civil in nature and the provisions of the Texas Code of Criminal Procedure do not apply unless the Legislature evinces a contrary intent."); *In re Gault*, 387 U.S. 1, 54, 87 S. Ct. 1428 (1967) ("We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults."). Because it is well established that the Fifth Amendment applies even to quasi-criminal proceedings such as juvenile adjudications, the mere fact that civil standards may apply in certain aspects of a habeas review would not be a proper basis for declining to grant relief in the present case.

In a situation in which a case does not carry the label of a criminal case, the Supreme Court has held that the federal constitutional Fifth Amendment right against self-incrimination applies when a statement "is or may be inculpatory." *Gault*, 387 U.S. at 49. As the Supreme Court explained,

> Against the application to juveniles of the right to silence, it is argued that juvenile proceedings are "civil" and not "criminal," and therefore the privilege should not apply. It is true that the statement of the privilege in the Fifth Amendment, which is applicable to the States by reason of the Fourteenth

Amendment, is that no person "shall be compelled in any criminal case to be a witness against himself." However, it is also clear that the availability of the privilege does not turn upon the type of proceeding in which its protection is invoked, but upon *the nature of the statement of admission and the exposure which it invites*. The privilege may, for example, be claimed in a civil or administrative proceeding, if the statement is or may be inculpatory.[ ] It would be entirely unrealistic to carve out of the Fifth Amendment all statements by juveniles on the ground that these cannot lead to "criminal" involvement . . . .

*Id*. (emphasis added).

Here, compelling relator's testimony in a post-conviction habeas proceeding "is or may be inculpatory," regardless of whether the proceeding itself is properly characterized as criminal or civil in nature. The State's inquiry into relator's defense at trial would necessarily devolve into questions about the defense strategy and the validity of that strategy in light of the facts of the offense. By the nature of relator's statements about the facts of the offense, relator would be revealing incriminating facts to which the State is not entitled.

Nor is the offer of use immunity enough. Just as the State cannot compel a defendant to testify in the guilt or punishment phase of a trial with promises of use immunity, it may not compel a defendant to testify with that offer at the post-conviction stage, which, in death-penalty litigation, is effectively part of a defendant's continuing direct appeal. As explained above, habeas litigation in a capital case is more like a direct appeal as to the issue of trial counsel's effectiveness than anything else. *See Trevino*, 133 S. Ct. at 1915, 1918 (holding that Texas's procedural framework makes it "highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial

counsel on direct appeal"); *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012) (observing that, when the habeas proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, that proceeding "is in many ways the equivalent of a prisoner's direct appeal" as to that claim).

Any inquiry into the facts of the offense and the punishment evidence would necessarily be inculpatory. Thus, under firmly established Supreme Court precedent, the Fifth Amendment prohibits the habeas court from compelling relator's testimony as to those matters. *See id*.

**C. The Law is Not Unsettled and There is No Adequate Remedy by Appeal**

The majority opinion holds that a writ of prohibition may not be issued because the law is unsettled and there is an adequate remedy by appeal. I disagree.

Although the majority opinion cites to a considerable number of cases in other contexts, none of that authority is persuasive here because, as explained above, habeas litigation in a death-penalty case falls into its own category. Because no one would ever suggest that a defendant does not have the right to remain silent during a direct appeal, and because the Supreme Court and the Texas Legislature have plainly indicated that an initial writ is the functional equivalent of a direct appeal in this context, I conclude that it is well established that the Fifth Amendment applies to relator.

I also disagree that there is an adequate remedy at law that would preclude the granting of prohibition relief here. Although it is true that this Court is the ultimate fact

finder and its judgment could order that no one is permitted to consider relator's testimony for any purpose whatsoever, the problem is that, by that time, the State will have become aware of relator's testimony so as to enable it to better prepare for any future trial that may be ordered. That type of reciprocal discovery is foreign to criminal cases and will give the State a leg up on the prosecution of applicant if applicant is successful in obtaining a retrial. Applicant is thus faced with a Catch-22, in that he may comply with the trial court's order and attempt to obtain habeas relief by revealing his defensive strategy to the State, or, alternatively he may refuse to comply with the trial court's order and thereby possibly give up his right to attempt to obtain habeas relief. The federal Constitution does not require a defendant to choose which of his rights he wishes to pursue, but instead permits him to seek to enforce all of his rights. This situation, therefore, is not one that provides applicant with an adequate remedy at law.

### III. Conclusion

I am unpersuaded that decisions from federal district courts or state courts have any application in the present context of a post-conviction proceeding in a death-penalty case so as to make this law unsettled, when the right against self-incrimination so indisputably constitutes a vital and fundamental privilege possessed by all people. Effectuating the federal constitutional guarantee in the Bill of Rights, I would hold that relator has a clear Fifth Amendment right to remain silent in his state habeas hearing challenging his death sentence. I, therefore, would grant relator's motion for leave to file and grant his motion for a writ of

prohibition.


Filed: November 4, 2015

Publish