

# NUMBER 13-10-00493-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI—EDINBURG

_____

**FRANCISCO EMMANUEL DOMINGUEZ,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

_____

### On appeal from the 357th District Court
### of Cameron County, Texas
_____

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Francisco Emmanuel Dominguez, was indicted for capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2011). He appeals his conviction for the lesser-included offense of murder, a first-degree felony. *See id.* § 19.02 (b)(1). Based on a jury's verdict, appellant was found guilty of murder and sentenced to twenty years

of confinement in the Texas Department of Criminal Justice, Institutional Division. By eight issues, including a challenge to the voluntariness of his confession and a claim of ineffective assistance of trial counsel, appellant argues that his conviction should be reversed.[1] We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

After failing to arrive for work at the high school where he taught, John Edward Farr, the murder victim, was found dead in his apartment. There was no sign of forced entry and nothing in the apartment appeared to be out of order. Farr was lying in his bed on his back, dead. Farr was wearing pajamas and had been stabbed over twenty times. Farr died of severe stab wounds to the left and right internal jugular. There were no definitive defensive wounds on his body. A toxicology report revealed that Farr was intoxicated at the time of his death.

Police who arrived at the murder scene noticed that Farr's cellular phone and a laptop computer were missing. Farr's car was also missing from outside the apartment. Texas Rangers attempted to determine the location of Farr's phone in the hope that the phone would lead them to the person who killed Farr.

In the meantime, appellant's aunt contacted the Harlingen Police Department and reported that appellant admitted to killing someone. Police were dispatched to

---

[1] In his prayer for relief, appellant asks this Court to reverse his conviction and enter a judgment of acquittal or, in the alternative, to remand the case to the trial court for a new trial. We note, however, that appellant has not presented a challenge to the sufficiency of the evidence which would entitle him to an acquittal in the event the State's evidence was found insufficient to sustain his conviction. *See e.g.*, *Villani v. State*, 116 S.W.3d 297, 307 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997), noting the sufficiency-review standard ensures that a judgment of acquittal is reserved for instances in which the State actually fails to prove the crime).

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

speak with appellant's aunt. When they arrived, appellant was with his aunt, and he told one of the officers, "You're going to find out anyway. I was stopped and arrested driving Mr. Farr's car." The officer confirmed with the Texas Department of Public Safety that one of its troopers stopped appellant while he was driving Farr's car. Shortly thereafter, appellant was arrested on suspicion of murder.

The police learned from appellant's aunt that Farr was one of appellant's teachers and that Farr would give appellant money. At the time of his arrest on June 16, 2008, appellant was sixteen years old. Appellant was placed in a juvenile-detention facility until August 2008, when at age seventeen, he was certified to stand trial as an adult and transferred to an adult-detention facility. After being transferred, he gave law-enforcement officers a written statement in which he admitted to killing Farr.

## A. The Relevant Contents of Appellant's Written Statement

Appellant's statement was admitted into evidence at trial. The beginning of appellant's statement includes a written warning and waiver of both his *Miranda* rights and his rights under article 38.22, section 2 of the Texas Code of Criminal Procedure. In his statement, appellant explained that he was giving his statement "voluntarily, without fear of duress or threat, and without promise of leniency." He also explained that prior to making the statement, he was advised that he was "suspected of or charged with the offense of capital murder."

Appellant described Farr's murder and the surrounding circumstances. Appellant explained that in January 2008, he started the second semester of his freshman year at Harlingen High School South. Farr was his speech teacher. About a week into the semester, Farr arranged for appellant to be in his "Theatre Tech" class. Farr would ask

3

him if he worked out, and he would ask him to flex his muscles. Farr said appellant could be a model or a stripper. Appellant stated that some time before spring break 2008, Farr called him on his cellular phone and told him to skip school to meet a friend of his who was a male stripper. According to his statement, appellant did so. Appellant visited Farr's apartment about ten times, and Farr would give appellant alcohol and money.

On the night of June 16, 2008, appellant called Farr and asked to borrow twenty dollars. Farr answered "yes" and told appellant to come to his apartment. After appellant drank about four mixed drinks and eight beers, Farr made multiple overt sexual advances to appellant while appellant was lifting weights. Appellant declined the advances and Farr offered him cocaine. After consuming the cocaine, appellant asked Farr if he was going to give him the twenty dollars. Farr told appellant to wait in his bedroom for the money and appellant did so. According to appellant, Farr then entered the bedroom holding a pointed object with a brown handle. Farr then attempted to molest appellant and during a struggle, appellant stabbed Farr with the pointed object. Appellant then stole some liquor from the apartment and fled in Farr's car.

Appellant attached to his written statement a drawing he made of the pointed object. It looks like an ice pick, though appellant did not use this term. On his drawing, appellant identified the "brown handle" and noted that the pointed portion measured four inches in length. Appellant signed beneath the drawing and wrote the date and time, "8-11-08 10:42 p.m."

**B. The Circumstances Surrounding Appellant's Written Statement**

The transcript of the hearing on appellant's motion to suppress his written statement shows that law-enforcement officers did not attempt to interrogate appellant after his arrest on June 16, 2008, because an attorney arrived at the Harlingen Police Station, stated he represented appellant, and stated no one could speak to appellant.[3] On August 11, 2008, Lieutenant Rolando Castañeda of the Texas Rangers was informed that appellant had been certified to stand trial as an adult and was not represented by counsel.[4] He traveled to the adult-detention facility and asked appellant if he would give a statement. Detective Frank Rolph of the Harlingen Police Department and Lieutenant Victor Escalon, Jr. of the Texas Rangers accompanied Lieutenant Castañeda when he interviewed appellant. They were present during the entire interview.

Lieutenant Castañeda testified that appellant said he wanted to talk to the law-enforcement officers the night he was arrested, but that his attorney would not let him. After being read his *Miranda* warnings and the warnings required under Texas Code of Criminal Procedure article 38.22, appellant spoke with the officers and gave his written statement. The record shows appellant also initialed and signed a written copy of both sets of rights. Appellant was interviewed and gave his written statement in a law library and appellant, though handcuffed, was advised he was free to take a break any time

---

[3] Lieutenant Castañeda testified that in June 2008 an attorney named Trey Garza appeared at the police station and made that statement. Trey Garza, however, did not represent appellant in the trial court.

[4] The appellate record does not include a copy of any motion to withdraw as counsel or any order permitting counsel to withdraw from representing appellant immediately following his certification to stand trial as an adult. After filing appellant's notice of appeal, appellant's trial counsel, Anthony P. Troiani, filed a motion to withdraw as counsel which the trial court granted before appointing appellate counsel.

during his three to three-and-a-half hour conversation with the officers. Appellant was very talkative and remained calm, though not emotionless, during the conversation.

Lieutenant Castañeda testified that if appellant had told him he did not want to speak, he would not have continued the conversation. Lieutenant Castañeda admitted that at one point in the conversation he probably did tell appellant he would "talk to the District Attorney's Office without promising anything and see what happens because of his cooperation." But when asked whether he told appellant this at the outset of the conversation, Lieutenant Castañeda responded that he could not recall at what point during the interview he made this statement. In response to questioning from defense counsel about when he made the statement, Lieutenant Castañeda clarified that the start of his conversation with appellant consisted of Lieutenant Castañeda introducing himself, telling appellant he was present to hear appellant's side of the story, and reading appellant his rights after appellant said he had wanted to give a statement from the "get-go." Lieutenant Castañeda testified that he did not promise appellant a reduced sentence in exchange for his statement, and that appellant was not threatened or coerced in any way to make a statement.

Detective Rolph testified that there was no conversation with appellant about how his confession would affect his case. Lieutenant Escalon testified that he did not remember anyone telling appellant that the officers would talk to the district attorney about his cooperation.

Appellant testified at the suppression hearing and, in several respects, gave a different account of the events that preceded his statement. Appellant testified that on the day of his arrest, June 16, 2008, he told law enforcement and a magistrate judge

6

that he did not want to talk to any of them. He was not interrogated at that time. Appellant testified that no law-enforcement officer attempted to talk to him again until August 11, 2008, after he was certified to stand trial as an adult. When asked whether he had an attorney at the time he was certified to stand trial as an adult, appellant testified, "No, sir. Well, at that time it was a juvenile court-appointed attorney."

Appellant testified that when the law-enforcement officers came to talk to him on the night of August 11, 2008, the officers told him that they wanted to know the truth and that if he spoke to them, they would tell the district attorney to give him "less time" or "help" him "out." Appellant testified that he initially told the officers he did not want to speak, but because of their offer, he "just told them what happened from the beginning."

## C. The Trial Court's Ruling on Appellant's Motion to Suppress

At the end of the suppression hearing, the trial court denied appellant's motion to suppress his written statement. The trial court found in open court that the statement was obtained in compliance with Texas Code of Criminal Procedure article 38.22, and its findings are included in the reporter's record. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West 2011) (requiring the trial court to enter the specific findings of fact that support its conclusion that the written statement made by an accused as a result of custodial interrogation was voluntarily made); *Drake v. State*, 123 S.W.3d 596, 601–02 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding trial court's oral findings that were dictated to a court reporter and made part of the record satisfied the article 38.22 requirement that the trial court enter findings); *Garza v. State*, 915 S.W.2d 204, 211 (Tex. App.—Corpus Christi 1996, pet. ref'd) (explaining it is mandatory for the trial court to file findings under article 38.22, section 6). The court also found appellant was read

his warnings, made a voluntary statement, and understood the consequences of giving his statement. *See e.g., Drake*, 123 S.W.3d at 601–02.

## II. ISSUES

In his brief, appellant asserts the following eight issues for review:[5]

(1) Did the trial court reversibly err by not suppressing appellant's written statement because it was obtained in violation of his Fifth and Sixth Amendment rights under the United States Constitution?

(2) Did the trial court reversibly err by not suppressing appellant's written statement under Texas Code of Criminal Procedure article 38.21 because the statement was induced by a promise from a law-enforcement officer that the statement would be beneficial to him?

(3) Did appellant receive ineffective assistance of trial counsel?

(4) Did the trial court err by allowing the State to introduce evidence of appellant's prior juvenile adjudications?

(5) Did the trial court reversibly err by refusing to instruct the jury to disregard improper jury argument concerning extraneous offenses?

(6) Did the trial court reversibly err by its failure to instruct the jury on the issue of extraneous offenses?

(7) Under Texas Rule of Evidence 403, did the trial court err in admitting photographs of the murder victim into evidence over appellant's objection?

(8) Did the trial court err in denying appellant a mistrial when the State improperly argued that appellant failed to make a statement to law-enforcement officers at the time of his arrest?

## III. ANALYSIS

### A. Appellant's Motion to Suppress His Written Statement

In the trial court, the focus of appellant's motion to suppress was that he lacked the intelligence to validly waive his rights and give a knowing, voluntary statement to the law-enforcement officers. Appellant also argued in his motion to suppress that: (1) his

---

[5] In the interest of judicial economy, we paraphrase appellant's issues as necessary. *See id.* 47.1.

8

written statement was inadmissible because it was obtained in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution; and (2) the statement was induced by an improper promise from a law-enforcement officer.

## 1. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Wiede v. State,* 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor, but we review de novo the trial court's application of the law to the facts because resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *See Guzman*, 955 S.W.2d at 89. We review a trial court's ruling on a motion to suppress in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24. If supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Mount v. State,* 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## 2. Admissibility of the Statement under the Fifth and Sixth Amendments

By his first issue, appellant argues that the trial court erred by admitting his written statement into evidence because it was obtained in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution. *See* U.S. CONST. amends. V, VI. Specifically, appellant argues that his statement was inadmissible under *Michigan v. Jackson* and *Edwards v. Arizona* because he was represented by counsel

9

when he gave the statement, counsel had previously advised law enforcement that no one was to speak to appellant, and counsel was not present when appellant was taken from his cell just after 10:00 p.m. and interrogated for over three hours. *See Michigan v. Jackson*, 475 U.S. 625, 636 (1986), *overruled by Montejo v. Louisiana*, 556 U.S. 778 (2009); *Edwards v. Arizona*, 451 U.S. 477, 485 (1981).

The Supreme Court of the United States has held that in deciding whether an accused actually invoked his right to counsel, reviewing courts must use an objective standard and determine whether an accused unambiguously requested counsel during custodial interrogation. *See Pecina v. State*, 361 S.W.3d 68, 79 (Tex. Crim. App. 2012) (citing *Davis v. U.S.*, 512 U.S. 452, 458–59 (1994)). This approach avoids difficulties of proof and provides officers guidance in conducting interrogations. *Id.* Thus, we review the totality of the circumstances from the viewpoint of the objectively reasonable police officer conducting a custodial interrogation.[6] *Id.*

In *Pecina v. State*, the Texas Court of Criminal Appeals considered how the Fifth and Sixth Amendment rights to counsel are invoked and how they apply to custodial interrogation. *See id.* at 74–75. The Fifth Amendment prohibits the government from compelling a criminal suspect to incriminate himself. *Id.* (citing U.S. CONST. amend. V which states, "No person . . . shall be compelled in any criminal case to be a witness against himself."). Before questioning a suspect who is in custody, police must give the suspect *Miranda* warnings. *Id.* at 75 (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)).

---

[6] This objective standard applies to a child's invocation of his constitutional right to have counsel present during custodial interrogation. *In re H.V.*, 252 S.W.3d 319, 333 (Tex. 2008) (citing *Davis v. U.S.*, 512 U.S. 452, 459 (1994)). The federal *Miranda* rights "apply to juveniles just as they do to adults." *Id.* at 325. In Texas, a person who is seventeen at the time of making a statement to law enforcement is treated as an adult. *See Ramos v. State*, 961 S.W.2d 637, 639 (Tex. App.—San Antonio 1998, no pet.) (citing *Griffin v. State*, 765 S.W.2d 422, 427 (Tex. Crim. App. 1989) and applying TEX. FAM. CODE ANN. § 51.095).

10

Only if the person voluntarily and intelligently waives his *Miranda* rights, including his right to have an attorney present during interrogation, may his statement be introduced into evidence against him at trial. *Id.* Under *Edwards*, once a person has invoked his right to have counsel present during custodial interrogation, police may not re-initiate interrogation; police may not badger a person into waiving his previously asserted *Miranda* rights. *Id.* (citing *Edwards*, 451 U.S. at 485). But *Miranda* rights can only be invoked within the context of custodial interrogation. *Id.* at 75–76. The Supreme Court of the United States has never accepted anticipatory invocation of *Miranda* rights (1) given by someone other than law-enforcement officers or other state agents; or (2) outside the context of custodial interrogation. *Id.* at 76 (citing *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991)).

The Sixth Amendment right to counsel attaches once the adversary judicial process has been initiated, and it guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings, including custodial interrogation. *Id.* at 77 (citing *Montejo*, 556 U.S. at 786). Under *Montejo*, if an accused who requested counsel at an arraignment or other initial appearance also wishes to invoke his Sixth Amendment right to counsel during post-arraignment custodial interrogation, he may do so by invoking his *Miranda* rights at the outset of custodial interrogation. *Id.* at 78. A defendant's invocation of his right to counsel at the time of magistration says nothing about his possible invocation of his right to counsel during a subsequent police-initiated custodial interrogation. *Id.*

In *Pecina*, paramedics responded to a 911 call and found Pecina and his wife in their apartment bleeding from stab wounds. *Id.* at 71. Pecina's wife died before the

11

paramedics arrived and police believed Pecina had killed his wife, then stabbed himself. *Id.* While Pecina was still in the hospital, an arrest warrant was obtained and a magistrate visited Pecina in his room. *Id.* The magistrate arraigned Pecina and then asked him if he wanted a court-appointed attorney and if he wanted to talk to the Arlington Police Department detectives who were waiting outside his hospital room. *Id.* at 72. Pecina stated he wanted a court-appointed attorney. *Id.* Pecina also responded that he wanted to speak with the detectives and never indicated to the magistrate that he wanted an attorney present when he spoke with the detectives. *Id.* The magistrate then exited the room. *Id.* The detectives entered Pecina's hospital room, and after Pecina received his *Miranda* warnings and waived his *Miranda* rights, he gave the police a recorded statement. *Id.* Later, trial counsel was appointed to represent him. *Id.* at 73. The Court of Criminal Appeals concluded that because the defendant never invoked his right to counsel during the custodial interrogation, the trial court properly denied his motion to suppress the admission of his statement into evidence at trial. *Id.* at 81.

In this case, as in *Pecina*, there is no evidence appellant ever invoked his right to counsel in the context of a custodial interrogation. Neither appellant's own testimony (that in June 2008, he told law enforcement and the magistrate he did not want to talk) nor Lieutenant Castañeda's testimony (that an attorney arrived at the Harlingen police station and stated no one could speak to appellant) showed that appellant invoked his *Miranda* rights during a custodial interrogation. Therefore, the trial court properly denied appellant's motion to suppress his written statement because the record did not show that appellant's statement was obtained in violation of his rights under the Fifth and

Sixth Amendments to the United States Constitution. *See id.* (citing *Montejo*); *see also Montejo*, 556 U.S. at 689 (explaining the Sixth Amendment does not categorically prohibit law-enforcement officers from approaching a defendant and asking him to consent to custodial interrogation solely because he is represented by counsel); *Montelongo v. State*, 681 S.W.2d 47, 53–54 (Tex. Crim. App. 1984) (explaining the trial court may reject the accused's testimony at a suppression hearing and believe the police officers' testimony instead; holding that absent an accused's clear invocation of the right to counsel during custodial interrogation, an attorney's unsolicited advice to not give a statement is not an invocation of the right to have counsel present during custodial interrogation).  Accordingly, we overrule appellant's first issue.

### 3.  Admissibility of the Statement under the Code of Criminal Procedure

By his second issue, appellant argues that his written statement was inadmissible under article 38.21 of the Texas Code of Criminal Procedure because it was induced by Lieutenant Castañeda's alleged promise to help appellant if he made a statement to the law-enforcement officers.[7]  *See* TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005).  We disagree.

Article 38.21 provides that a statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion.  *Id.*  To decide whether a statement meets this standard, a court of appeals must examine the totality of the circumstances surrounding the

---

[7]  In the trial court, appellant cited Texas Code of Criminal Procedure article 38.22 in support of his contention that a promise may have rendered his statement involuntary, but on appeal he cites article 38.21.  *See* TEX. CODE CRIM. PROC. ANN. arts. 38.21, 38.22 (West 2005).  Notwithstanding this discrepancy, we will address the merits of appellant's second issue because under both articles, the Texas Court of Criminal Appeals has used the same test in determining whether a promise rendered a confession involuntary.  *Compare Joseph v. State*, 309 S.W.3d 20, 26 n.8 (Tex. Crim. App. 2010) (analyzing the voluntariness of a statement under article 38.22), *with Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004) (analyzing the voluntariness of a statement under article 38.21).

13

acquisition of the statement to determine whether it was given voluntarily.  *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007); *Creager v. State,* 952 S.W.2d 852, 856–57 (Tex. Crim. App. 1997).  For a promise to render a confession invalid under article 38.21, the promise must be:  (1) positive; (2) made or sanctioned by someone in authority; and (3) of such an influential nature that it would cause a defendant to speak untruthfully.  *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004) (citing *Henderson v. State*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997)).  However, the relevant inquiry under state law is not whether the defendant spoke truthfully or not, but whether the officially sanctioned, positive promise would be likely to influence the defendant to speak untruthfully.  *Id.* at 794–95.

In *Masterson*, the Court of Criminal Appeals held that a police officer's statement to a defendant that he would "pass along" information if the defendant admitted to owning certain drugs, did not amount to a positive promise.  *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005).  Similarly, in *Martinez*, the Court of Criminal Appeals concluded that no positive promise was made when a police detective testified that he made no promises to the defendant, he told the defendant he needed to know who owned the drugs, and that the defendant "could have gathered" from that statement that his brother and father would not be charged if the defendant accepted responsibility for the drugs.  *Martinez*, 127 S.W.3d at 793, 795.

In considering appellant's motion to suppress, the trial court was free to believe the law-enforcement officers' testimony and to disbelieve appellant's testimony.  *See Delao*, 235 S.W.3d at 238; *Masterson*, 155 S.W.3d at 171.  With regard to whether a promise was made, Lieutenant Castañeda testified that he did not promise appellant

14

anything, but testified that he probably did tell appellant he would talk to the district attorney's office and see what happened based on appellant's cooperation. Lieutenant Castañeda's testimony also showed that while he could not recall the point in the conversation at which he would have made this statement to appellant, it was not at the beginning of the conversation or before appellant agreed to give a statement. Conversely, Lieutenant Escalon and Detective Rolph testified respectively that they did not recall any conversation about how the statement would affect appellant's case and that there was no such conversation with appellant. Considering the totality of the circumstances, the evidence supports the trial court's implied finding that no positive promise was made to induce appellant to give his statement. *See Martinez*, 127 S.W.3d at 795; *Masterson*, 155 S.W.3d at 170. We overrule appellant's second issue.

## B. Appellant's Claim of Ineffective Assistance of Trial Counsel

By his third issue, appellant argues that his trial counsel rendered ineffective assistance under the United States and Texas Constitutions because counsel failed to request a psychological examination to "check [a]ppellant's competency to stand trial; and . . . [a]ppellant's IQ to establish diminished capacity in [a]ppellant's thought process." Appellant also argues that his trial counsel failed to object to the admission of multiple extraneous offenses, but he does not provide record citations in support of this argument. To the extent appellant has failed to support his ineffective-assistance claim with citations to the record showing trial counsel's failure to object to the alleged admission of multiple extraneous offenses, appellant fails to present anything for appellate review. *See* TEX. R. APP. P. 38.1(i); *Castillo v. State*, 186 S.W.3d 21, 24 (Tex. App.—Corpus Christi 2005, pet. ref'd).

15

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.051 (West 2011). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove ineffective assistance of counsel, a defendant must show, (1) by a preponderance of the evidence, that counsel's performance was so deficient that he was not functioning as acceptable counsel under the Sixth Amendment; and (2) there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687–96; *Thompson v. State,* 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The defendant must overcome the strong presumption that the challenged action might have been sound trial strategy. *Thompson*, 9 S.W.3d at 813. We will not speculate to find trial counsel ineffective when the record is silent as to counsel's reasoning or strategy. *Godoy v. State*, 122 S.W.3d 315, 322 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

When, as in this case, there is no evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *See Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Aldaba v. State*, No. 14-08-00417-CR, 2009 WL 1057685, at *5 (Tex. App.—Houston [14th Dist.] April 16, 2009, pet. ref'd). If there is no hearing or if counsel does not appear at the hearing, an affidavit from trial counsel becomes almost vital to the success of an ineffective-assistance claim. *Stults v. State,* 23 S.W.3d 198, 208–09 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The Texas Court of Criminal Appeals has stated that it should be a rare case in which an appellate court finds ineffective assistance on a

16

record that is silent as to counsel's trial strategy. *See Andrews v. State,* 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). On a silent record, this court can find ineffective assistance of counsel only if the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Appellant's ineffective-assistance claim fails because he has not met his burden under either prong of the *Strickland* test. The record contains multiple psychological evaluations of appellant and reflects that trial counsel was aware of appellant's intelligence quotient based on a professional evaluation. For example, the record shows that on July 3, 2008, a psychological evaluation was performed on appellant to determine whether he could be certified to stand trial as an adult. The psychologist concluded and explained in his report that appellant could knowingly participate in the judicial process, converse, and make agreements with full comprehension. The psychologist wrote appellant "is well aware of what he is doing" and recommended that appellant was certifiable to stand trial as an adult.

On this record we cannot conclude that appellant has shown by a preponderance of the evidence that trial counsel's performance was so deficient that he was not functioning as acceptable counsel by not requesting further psychological or intelligence evaluation. *See Strickland,* 466 U.S. at 687–96. Moreover, appellant offers no explanation, let alone an explanation rooted in the record, of how the outcome of the proceeding would have been different had trial counsel not been deficient as alleged and thus, appellant has not met his burden to show prejudice. *See id.* Appellant's third issue is overruled.

## C. Appellant's Remaining Issues

Appellant's remaining issues (issues four through eight) present nothing for appellate review because appellant has failed to support these issues with appropriate citations to the record.[8] *See* TEX. R. APP. P. 38.1(i) (providing the brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record); *Castillo*, 186 S.W.3d at 24; *see also Cook v. State*, 611 S.W.2d 83, 87 (Tex. Crim. App. [Panel Op.] 1981) ("This court with its tremendous caseload should not be expected to leaf through a voluminous record hoping to find the matter raised by appellant and then speculate whether it is that part of the record to which appellant had reference."); *see also Rodriguez v. State*, No. 13-05-00522-CR, 2006 WL 2382768, at *1 n.2 (Tex. App.—Corpus Christi, Aug. 17, 2006, no pet.) (mem. op., not designated for publication) (concluding defendant's sub-issue that the trial court omitted extraneous-offense instruction from jury charge presented nothing for review because it was inadequately briefed). Appellant's fourth through eighth issues are overruled.

## D. Response to Dissenting Memorandum Opinion

The dissent argues that because the juvenile court had not yet signed its order waiving jurisdiction and transferring appellant's case to the trial court when appellant gave his written statement, law-enforcement officers improperly obtained appellant's written statement and the trial court reversibly erred by failing to suppress the written statement *sua sponte*. We cannot agree with the dissent's analysis because it fails to

---

[8] By his eighth issue, appellant argues the trial court erred by denying him a mistrial when the State improperly argued that appellant failed to make a statement to law-enforcement officers at the time of his arrest. In support of his eighth issue, appellant provides a single record citation to a portion of the State's closing argument during the punishment phase of trial. However, nowhere in the pages cited, nor in the pages immediately preceding or following it, is there any argument concerning appellant's failure to make a statement at the time of his arrest or any denial of a request for a mistrial made on this basis.

18

explain why its transfer-order argument is not subject to waiver and because it does not adequately address either the legal significance of appellant's age (seventeen) when he gave his written statement to law enforcement or the legal significance of appellant's physical transfer to an adult-detention facility prior to giving his statement. In addition, the dissent's reliance on dicta from *Vasquez v. State* is misplaced because *Vasquez* is not about the signing or timing of a juvenile court's transfer order. *See* 739 S.W.2d 37, 43 (Tex. Crim. App. 1987) (en banc).

Procedurally, we note that even if appellant's statement was improperly obtained because the juvenile court's transfer order was not signed before appellant gave the statement, the dissent fails to explain how this Court could consider the argument when it was not raised in the trial court or on appeal. *See* TEX. R. APP. P. 33.1, 38.1. In the trial court, there was no dispute about whether appellant was an adult at the time he gave his written statement to law enforcement. Instead, appellant argued his motion to suppress his written statement on the premise that he was an adult at the time he gave the statement. At the outset of the suppression hearing, the State urged the trial court to dismiss appellant's motion because it was too vague. In response, appellant's counsel explained his suppression argument to the trial court, stating, among other things, that even though appellant had been certified to stand trial as an adult, had turned seventeen, and had been transferred to an adult-detention facility before giving his written statement, appellant lacked the intelligence to validly waive his rights and voluntarily give law-enforcement officers a statement.

On appeal, appellant has not changed his position concerning whether he was an adult when he gave his written statement. In other words, even assuming for the

19

sake of argument only that appellant was entitled to the protections of Family Code section 51.095 when he gave his written statement, appellant waived this complaint by not raising it in the trial court and by not briefing it on appeal. *See Ponce v. State*, 985 S.W.2d 594, 595 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding defendant failed to preserve for appellate review her claim that her statement was taken in violation of Family Code section 51.095 when she did not obtain a ruling on this claim in the trial court); *see also* TEX. R. APP. P. 33.1, 38.1; *Geter v. State*, No. 05-95-00775-CR, 1996 WL 459767, at *3 (Tex. App.—Dallas July 31, 1996, no pet.) (not designated for publication) (holding appellant failed to preserve for appellate review his complaint that his confession was inadmissible because it was not given in accordance with the Family Code requirements pertaining to admissibility of a child's statement).

We further note that there is no evidence in the record that law-enforcement officers attempted to interrogate appellant on June 16, 2008, after appellant's arrest. At the suppression hearing, appellant testified as follows about his interaction with law-enforcement officers at the time of his arrest. Appellant gave the following testimony on direct-examination:

Q.     Okay. Back in June of 2008, how old were you?

A.     I was 16.

Q.     Okay. On June 16th, 2008, were you arrested?

A.     Yes, sir.

Q.     Okay. At that time, were you approached by officers of the—well, law enforcement officers?

A.     Yes, sir, I was.

Q.     Okay. Did you at that time agree to speak with law enforcement officers?

20

A. No, sir, I did not. I refused.

Q. Okay. Do you remember what the officers—did the officers speak to you at all?

A. No, sir.

Q. Okay.

A. They just asked me if I wanted to speak to them, and I said no, I did not.

Q. Okay. And where were you taken?

A. To Harlingen PD.

Q. Okay. And at Harlingen PD, were you placed in a cell?

A. No, sir. It was in, I believe it was like a little office.

Q. Okay.

A. It was in a room, yeah.

Q. Okay. And at that time what happened?

A. I was there for a while, about an hour, and they told me if I wanted to speak to anybody. I said, "No, I don't want to speak to anybody." And then I believe it was a, Judge Sallie Gonzalez, she came and told me that if I want to speak to her. I said no, I refused, and I signed the paper.

Q. Okay. And so when you spoke with the officers, you told them you didn't want to speak to them; and then when you spoke, when Judge Gonzalez asked you about it, you told her you didn't want to speak to the officers either?

A. No, sir.

Q. Okay. Between that time, between speaking with Judge Gonzalez and August 11th of 2008, did anyone attempt to speak with you or talk to you about this case?

A. No, sir.

Q. From law enforcement?

A. No, sir.

21

Lieutenant Castañeda testified that there was no attempt to interrogate appellant after his arrest on June 16, 2008, because an attorney arrived at the Harlingen Police Station, stated he represented appellant and no one could speak to appellant. As the sole fact finder at the suppression hearing, the trial court was free to believe Lieutenant Castañeda's testimony. *See Wiede*, 214 S.W.3d at 24.

The dissent would hold that section 54.02 of the Texas Family Code required the juvenile court to sign its transfer order before appellant made his statement in order for the statement to be admissible. Section 54.02 of the Family Code is titled "Waiver of Jurisdiction and Discretionary Transfer to Criminal Court." *See* Tex. Fam. Code Ann. § 54.02 (West 2008). Section 54.02 addresses the circumstances under which a juvenile court is authorized or required to waive its jurisdiction and transfer a case to a criminal court. *See id.* § 54.02(a),(m); *see also Miller v. State*, 981 S.W.2d 447, 449 (Tex. App.—Texarkana 1998, pet. ref'd) (discussing section 54.02). Section 54.02 also sets forth certain required contents of an order waiving jurisdiction and transferring a person to the appropriate court for criminal proceedings. *See* Tex. Fam. Code Ann. § 54.02(h). However, the Legislature has not made section 54.02 the legal standard for the admissibility of a statement given by a seventeen year old incarcerated in an adult-detention facility.

Neither Family Code section 51.095 ("Admissibility of a Statement of a Child") nor section 54.02 ("Waiver of Jurisdiction and Discretionary Transfer to Criminal Court") makes the date the transfer order is signed dispositive of whether the admissibility of a statement is governed by Family Code Section 51.095. *See id.* §§ 51.095, 54.02. Section 51.02 of the Family Code defines a "child" as someone who is "ten years of age

22

or older and under 17 years of age." *See id.* § 51.02. The protections of Family Code section 51.095, pertaining to the admissibility of statements, apply only to "the statement of a child." *See id.* § 51.095. Appellant was not a child when he made his written statement because he had already turned seventeen. *See id.*; *see also Griffin v. State*, 765 S.W.2d 422, 427 (Tex. Crim. App. 1989) (explaining the admissibility of a statement made at age sixteen and before juvenile court relinquished jurisdiction was properly analyzed under the Family Code); *Lovell v. State*, 525 S.W.2d 511, 514 (Tex. Crim. App. 1975) (same); *Ramos v. State*, 961 S.W.2d 637, 639 (Tex. App.—San Antonio 1998, no pet.) (citing *Griffin*, 765 S.W.2d at 427 and applying TEX. FAM. CODE ANN. § 51.095).

Our interpretation is supported by the following language in section 54.02 which the dissent did not include as pertinent to its analysis: "[o]n transfer of the person for criminal proceedings, the person shall be dealt with as an adult and in accordance with the Code of Criminal Procedure. . . . The transfer of custody is an arrest." TEX. FAM. CODE ANN. § 54.02(h). Appellant had been transferred to an adult-detention facility when he made his statement. Without ruling on the issue of the precise timing of a transfer order, the Court of Criminal Appeals has interpreted the arrest language in the statute to mean that once a person is transferred to adult custody from juvenile custody, he is arrested "as an adult suspect." *See Vasquez*, 739 S.W.2d at 40.[9] While the *Vasquez* Court stated in dicta, "[u]ntil the moment transfer is ordered, the juvenile is cloaked with the trappings of a non-criminal proceeding with attendant safeguards such

---

[9] The issue before the Court of Criminal Appeals in *Vasquez v. State* was whether a defendant arrested as a juvenile, but later certified to stand trial as an adult, was entitled to the protections of the adult-arrest statute in Texas Code of Criminal Procedure article 14.04 at the time of his initial detention. 739 S.W.2d 37, 40 (Tex. Crim. App. 1987) (en banc). The court held he was not. *Id.* at 43.

as greater protections in the areas of confession law and notice requirements[,]" *Vasquez* does not contemplate, in dicta or otherwise, the proper procedure and timing for signing a transfer order under section 54.02 of the Family Code. *See id.* at 44. Thus, the dissent's emphasis on *Vasquez* is misplaced.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
Gregory T. Perkes
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Delivered and filed the
26th day of July, 2012.

24